DANIEL WINGARD, plaintiff in error, vs. NELSON TIFT, defendant in error.

[1.] A verbal license to erect a dam and fish traps, is not a license to renew the dam and traps as often as they may be swept away by the water.

[2.] At least, such a license, after the dam and traps have been swept away, is revocable at any time, before they are renewed.

In Equity, from Dougherty county, decision by Judge ALLEN, at Chambers, 13th Oct., 1857.

Motion to dissolve injunction on the coming in of the answer.

This bill was filed by Tift, in which he stated that he was the owner of lot 324 on Flint River, at Albany, and that his right extended to the centre of the stream; that he was also the owner of the ferry on lot 323. He states that the defendant, Wingard, was in the course of erecting a dam and fish traps for the purpose of catching fish in the river, which dam extended from the bank of the river, belonging to the complainant, and across the river to its centre—the effect of which would be to raise the water above the dam and depress it below, and cause a strong and dangerous current on the east side of the river and a reverse current below on the other side—that this cross current would be in the track of the ferry and make it very dangerous and greatly increase the expense to complainant of keeping up the ferry. That Wingard was insolvent; that the damages occasioned would be very considerable and could not be recovered by damages at law. He therefore prayed by his bill that Wingard might be restrained from completing the works, and that he might be protected in his property.

An injunction was granted as prayed by the bill.

The defendant in his answer did not deny the allegations contained in the bill as to complainant's right and title to the lot 324, nor to the ferry, but admits his title at least to part of it. In his answer he went on to state the works which were made in the river and alleged that an agreement was entered into between himself and Jesse Floyd and the complainant, in the year 1849, by which Tift agreed that these traps and a dam might be made in the river, the consideration being that he was occasionally to *have a mess of fish*; that under that agreement he erected the works; that in 1852 some malicious person destroyed them and that he again erected them in 1855; that in 1856 he repaired the same at great expense; that in 1857 the injuries caused to the works by the high waters were very great; that he was repairing that damage and that if the works were suspended great damage to the amount of $7000 would be the result;

that he had so far proceeded with the works that in ten days: they would be completed.    The defendant also admitted his insolvency, but denied that the works would be injurious to the plaintiff or increase the risk or expense of the ferry. The defendant also stated that in 1855 or 1856 the plaintiff had sued him in forcible entry and detainer, and that he,. the defendant, had gained the case.

The defendant, upon filing his answer, moved to dissolve the injunction.    Both parties submitted affidavits.    The complainant in support of his bill and to rebut the answer. The defendant in support of the answer.

The Court overruled the motion to dissolve the injunction and counsel for defendant excepted.

There were also exceptions to the rulings of the Court in relation to the admission of the affidavits, and the right of complainant to the opening and conclusion, but as no opinion is pronounced by this Court on these exceptions, they are here omitted.

STROZIER & SMITH, for plaintiff in error.

LYON & IRWIN, *contra.*

*By the Court.*—BENNING J. delivering the opinion.

Ought the Court to have dissolved the injunction?

This depends upon, whether the equity of the bill, had been sworn off by the answer.

The answer says: "that some time during the year 1849, complainant granted and gave to defendant, and one Jesse Floyd, the right and privileges of putting into the waters of Flint river, on his pretended soil and bed of said stream, and lying opposite said lot of land, 324, as many fish traps, as defendant and said Floyd desired, without regard to the number thereof, kind, or manner of locating them, asking and requiring in consideration therefor, a mess of fish occasionally;" and that during that year, the defendant

(Wingard) and Floyd accordingly built a dam and put in traps.

[1.] This was a license to build a dam and put in traps, in 1849, not in 1857. There is nothing in the *terms* of this license, to give to Wingard and Floyd, the right to renew the dam and traps *ad infinitum*, as often as they might be swept away by the waters. The dam and traps had been, twice or thrice, swept away before 1857, when the last renewal was about to be made, to prevent which the bill was filed.

[2.] Again, there is no dispute, that such a license is revocable, if its revocation does no damage to the person to whom, it has been granted. Therefore if Tift had chosen to revoke this license, before the first dam and traps had been put in, he might have done so. In that case, the license could not have been the means of putting Wingard and Floyd, to any expense. So, Tift might revoke the license at any time after the dam and traps had been swept away, for then, things would stand just as they stood in the beginning. This Tift, once and again, did do. His forcible entry and detainer suit, brought in 1855, or 1856, to prevent the renewal of the dam and traps—a renewal then first undertaken although they had then been swept away as long before as 1852, was, itself, sufficient evidence of a revocation.

The present bill of Tift, is further evidence of the same thing, and it was filed before Wingard had begun to put in the new dam and traps. *Hall vs. Boyd & Campbell,* 14 *Ga. R.* 1.

This defence, then, set up in the answer, is not sufficient; and this, is the whole defence. The Court, therefore, was right in refusing to dissolve the injunction.

I must say too, that in my opinion, a verbal license is within the statute of frauds; and therefore, that, whether acted upon or not, it is revocable at any time, at the option of the licenser. And this, I think, is the clear result of the

English cases, as they stand at present. See *Wood vs. Leadbetter*, 13 *Mas. & W.*, 838; *Cocker vs. Cooper* 1, *Cromp. M. & Ros.* 418; *Hewlans vs. Shippam*, 5 *B. & C.* 222; *Bryan vs. Whistler*, 8 *B. & C.* 288; *Wallis vs. Harrison*, 4 *M. & W.* 538; *Sug. Ven. & P.* 137.

The case of *Sheffield vs. Collier*, 3 *Kelly*, is, perhaps, not necessarily adverse to this view. In that case, the two Colliers were *joint tenants* of the whole lot, each, therefore, by *virtue of this tenancy*, was rightfully in possession of the *whole* lot. The agreement between them, amounted to an agreement, to *partition* the land a certain way, such a way as to give to one brother, the right to use the part that was to go to the other, for certain purposes. Here, was, at least, a plenty of *consideration*. Sheffield merely succeeded to the right, whatever it was, of the latter brother, becoming himself tenant. In such a case, it may, perhaps, be true, that an action of *trespass* would not lie.

And, then, there is the principle of *contribution* among joint tenants and tenants in common—a principle, which, perhaps, may have some bearing in such a case.

Judgment affirmed.