FLUKER *vs.* THE GEORGIA RAILROAD AND BANKING CO.

81   461
101   74
81   461
103   839
81   461
f107   646
107   648
107   649
81   461
125   688
81   461
J128   763

1. The dominion of a railroad corporation over its trains, tracks and "right of way" is no less complete or exclusive than that which every owner has over his own property. Hence, the corporation may exclude whom it pleases, when they come to transact their own private business with passengers or other third persons, and admit whom it pleases, when they come to transact such business. This applies to selling lunches to, or soliciting orders from, passengers for the sale of lunches.

2. A mere implied license, no matter how long enjoyed, to transact such business, for which no consideration has been paid, is revocable at any time, and such revocation results from notice not to prosecute the business in the future.

3. One who persists in using the license after notice of its termination, may be prevented from so doing by such force, not extending to life or limb, as may be necessary to effectuate his expulsion from the premises.

4. A lessee or licensee of the exclusive privilege of entering the cars or upon the right of way to sell or supply lunches, is not a servant or agent of the corporation, so as to render it liable for an assault, or an assault and battery, committed by such lessee or licensee upon a competitor who seeks lawfully, on his own premises, to obtain the patronage of passengers.

5. A master has no right of action for an assault, or an assault and battery, upon his servant, unless some loss of service or capacity to serve results therefrom.

January 21, 1889.

Railroads. License. Revocation. Notice. Master and servant. Torts. Actions. Before Judge JENKINS. Greene superior court. March term, 1888.

Reported in the decision.

H. T. & H. G. Lewis, for plaintiff.

J. B. Cumming and J. A. Billups, for defendant.

Bleckley, Chief Justice.

The plaintiff had for some nine years, without objection on the part of the company, exercised the privilege of coming upon the right of way and dealing with passengers by supplying them with lunches. A part of the time he had even used the platform of the company for this purpose, and perhaps also had been allowed to enter the cars. The privilege, except as to coming upon the right of way, was revoked some four years previously to October, 1886. On the 10th of said October, the plaintiff received notice to cease the exercise of the privilege as to the right of way, and was also informed that the exclusive right of serving lunches to passengers had been leased by the company to one Hart. About a week after receiving this notice, the plaintiff's servant was on two or three occasions expelled from the right of way by a servant of the company, and in one instance the company's servant, in controlling the action of the plaintiff's servant, did not desist where the right of way stopped, but conducted the intruder across the public street and up to the plaintiff's door. The plaintiff, seeing that he could not carry on his business through the medium of a servant, undertook to conduct it himself, and he also was expelled, both Hart and the defendant's servant co-operating in his expulsion, and Hart, but not the servant, continuing the use of force beyond the right of way and into the public street. The plaintiff, after this, undertook to advertise his business by ringing a bell in the street in front of his premises, and Hart alone interfered with that, and committed an assault upon him in

the street. For these grievances he brought his action against the company. The case was tried and the court granted a nonsuit.

1. It is contended that the company has no such exclusive dominion over the tracks and spaces embraced in its right of way as to entitle it to exclude therefrom any person entering thereon in an orderly manner and upon lawful business; and especially, that it cannot discriminate against one person and in favor of another. We have discovered no authority for this position, either in its more limited or more extended form. On the contrary, it would seem that the very nature of property involves a right to exclusive dominion over it in the owner. We cannot believe that there is a sort of right of common lodged in the public at large to enter upon lands on which railroads are located, and over which they have secured the right of way. Such lands the railroad companies may inclose by fences if they choose to do so, and exclude any and all persons whomsoever. Their dominion over the same is no less complete or exclusive than that which every owner has over his property. If they do not choose to erect fences and make enclosures, they may, by mere orders, keep off intruders, and they may treat as intruders all who come to transact their own business with passengers or with persons other than the companies themselves. To do this, however, they must give fair notice; inasmuch as by a sort of common law or common understanding in this country, an unforbidden entry on uninclosed lands is not a trespass, unless the intruder comes for some improper purpose, or to remain an undue or unnecessary length of time. It is manifest that the grant of the privilege to one or more is no rightful cause of complaint on the part of others to whom a like privilege is denied. The right

to make such discriminations is incident to the owner-
ship of all property which is not devoted to some use
that in and of itself involves an invitation to the pub-
lic to enter and enjoy for the time being.     The busi-
ness of selling lunches to passengers, or of soliciting
from them orders for the same, is not one which every
citizen has the right to engage in upon the tracks and
premises of a railway company, and consequently those
who do engage in it and carry it on must be dependent
upon the company for the privilege.     And whether the
permission, when granted, be called a lease or a license,
makes no difference; nor does it make any difference,
except in the matter of revocation, whether the grant
be gratuitous or made for a consideration.     Barney *vs.*
Oyster Bay, etc., 67 N. Y. 301; Landregon *vs.* The
State, 31 Ark. 50; Hazen *vs.* R. R. Co., 2 Gray, 577;
Railroad Co. *vs.* Philadelphia, 88 Penn. St. 424; Sweeny
*vs.* R. R. Co., 128 Mass. 5; Railroad Co. *vs.* Bingham,
29 Ohio St. 364; *Keller vs. Dillon,* 26 *Ga.* 701.

2. That the company allowed the plaintiff to sell
his lunches upon its right of way for a long space of
time, say nine years, without objection, gave him no
right to the privilege in perpetuity.     He paid the com-
pany no consideration, but enjoyed a mere implied
license, which was revocable at any time, certainly so
after giving him reasonable notice.     In this instance,
he had notice for about one week before any decisive
steps were taken to put a stop to his dealings.     He re-
fused to yield to the notice, and for that reason alone a
resort to force on the part of the company was had.
There can be no doubt that such a license could be ter-
minated by notice.     1 Wash. Real Prop., 400; 3 Kent
Com. 452, 453; Parish *vs.* Kaspare, 109 Ind. 586; *Win-
gard vs. Tift,* 24 *Ga.* 179; *Colcord vs. Carr,* 77 *Ga.* 106;
*Cook vs. Pridgen,* 45 *Ga.* 340; *Mayor of Macon vs. Frank-
lin,* 12 *Ga.* 239; *Sheffield vs. Collier,* 3 *Ga.* 82.

3. The force used by the company's servant was of a mild and gentle character, certainly so as against the plaintiff himself. Not only was no violence done to life or member, but not even was the plaintiff treated rudely; and the company's servant desisted before the plaintiff had withdrawn beyond the right of way. A far greater degree of force than that used would have been justifiable, had the plaintiff rendered it necessary in order for his expulsion to be accomplished. Wood vs. Leadbetter, 13 M. & W. 838.

4. For the violence of Hart, the lessee or licensee of the privilege, the company is not responsible. He was not acting as a servant of the company, but in his own behalf; and although the company, by its servant, co-operated with him in the beginning, that co-operation ceased before Hart had transcended the limits of his own rights. If Hart pursued the plaintiff into or upon the street, he alone is responsible. The company's servant declined to take part in that proceeding, but confined himself and his action to the company's premises. This same distinction applies to Hart's interference with ringing the bell in front of the plaintiff's premises, on the street. Hart alone undertook to deal with plaintiff for using the bell, and so for as appears, no servant of the company was even present on that occasion. His conduct then and there certainly affords no cause of action against the company.

5. It does appear, however, that the company's servant, although he did not chase the plaintiff beyond the right of way, pushed the matter further in dealing with the plaintiff's servant. He not only forced him off the right of way, but across the street and to the plaintiff's door. This may give a cause of action to the servant, but it furnishes none to the plaintiff; because there was no loss of service, nor any impairment of capacity to

render service.   And for a master to have a right of action for an assault and battery committed upon his servant, one or both of these consequences must ensue. Robert Mary's case, 9 Coke, 130a; Wood's M. & S. §224; Bigelow on Torts, 108, 109; 1 Minor's In. 224, and authorities cited

Judgment affirmed.