THE CITY COUNCIL OF AUGUSTA *v.* BURUM & CO. *et al.*

1. As the municipal government could not, in the absence of express legislative authority, grant the right to erect and perpetually maintain awnings over the sidewalks of the city, the rightful existence of such awnings can be accounted for only upon the assumption that they were erected under a license, express or implied, from such government; and however long they may have been in existence, their continuance must be referred to the original license, or to a renewal or repetition of the same. No lapse of time will render the license irrevocable; but there would be an equitable estoppel against a needless or capricious revocation until sufficient time had elapsed after the expense of erecting the structures was incurred to allow those who incurred such expense to realize, in the way of use and enjoyment, a fair return for their outlay. Whenever such time has elapsed, the license to continue the structures may be revoked, and unless, after reasonable and fair warning, they are removed by the owners, the city.authorities may remove them as encroachments upon the streets no longer authorized.

2. Where the awnings in question have existed from nine to more than twenty years, the fair presumption, there,being no evidence to the contrary, is that those who erected them have been compensated by their use for all expenditures made upon the faith of the license granted. An ordinance revoking the license is, consequently, *prima facie* valid, and its enforcement should not be enjoined.

December 18, 1893.

Petition for injunction. Before Judge RONEY. Richmond county. June 19, 1893.

JOHN S. DAVIDSON, for plaintiff in error.
W. W. MONTGOMERY and J. R. LAMAR, *contra.*

LUMPKIN, Justice.

1. By a special act approved November 23, 1814 (Acts 1814, p. 36; City Code of Augusta, p. 346), " to prevent encroachments on the streets and highways in the City

of Augusta, and to remove such as now exist," the municipal authorities of that city were given full power to remove any "obstruction or encroachment upon the streets or highways within the limits of said city, at the expense of such person or persons as shall cause the same. The method of exercising the power thus con-. ferred is pointed out in section 6 of that act, which declares "That the said City Council of Augusta shall have full power and authority to make such by-laws, rules and regulations, as they may deem necessary, fully and effectually to prevent encroachments on the said streets and highways hereafter, and to remove such as now exist, and such as may hereafter exist, as in their opinion may be least burthensome to the citizens, and best calculated to promote the good order and welfare of said city and its inhabitants." Undoubtedly, in the exercise of the powers incident to this grant of control over the streets of the city, the municipal government could, by ordinance, peremptorily prohibit the erection of any awning, of whatever material or however constructed, which encroached ever so little upon a street or sidewalk; and as to an awning built in violation of such ordinance, the city authorities could cause the same to be summarily torn down, with or without notice to the owner. The record, however, discloses that awnings have existed in Augusta from a time "when the memory of man runneth not to the contrary," and that no official action was taken by council in respect to such structures until 1857, about forty-three years after the passage of the act of 1814. Prior to 1857, the municipal authorities seem to have acquiesced in the erection of such awnings as property-holders might deem proper, convenient and safe. Certain it is that no ordinance having direct reference to awnings was adopted until the year last named, when it was ordained that "All posts and rails fixed in any street for the purpose of supporting

any awning shall be round turned posts, and shall be placed next to and along the inside of the curbstone, and shall be twelve feet in height above the sidewalks, including the rail on top"; and "No portion or any part of any cloth or canvas used as an awning shall hang loosely down from the same over the sidewalk or footpath." Again, in 1888, after the lapse of about thirty-one more years, another ordinance was adopted, in which it was declared that: "All consents or permissions heretofore granted by the city council, or by the board of fire wardens," in respect to the erection of awnings, be revoked; and "No person or persons shall build or erect any hanging sign or signs, awning or awnings, on the streets of this city, without first obtaining permission from the streets and drains committee of council and the board of fire wardens conjointly, which permission may be revoked at the pleasure of council." Notwithstanding this last ordinance, it does not appear that any action looking to the removal of existing awnings was taken by the city authorities until the 28th of February, 1893, when council adopted a resolution in these words: "Resolved, that all wooden awnings in the city, *i. e.* over streets or sidewalks, be taken down within sixty days, at the expense of the owners." The petition in the present case was brought to restrain the municipal authorities from executing this resolution, which is in the nature of an ordinance; the injunction prayed for was granted, and the city council excepted.

Petitioners, among other things, alleged that the awnings in question were erected at considerable expense, with the full knowledge and consent of the city authorities; " that the last erected awning of petitioners was put up more than nine years ago, and most of them have been where they now are for more than twenty years, except that when new material was inserted therein to strengthen an old awning or rebuild "; that

these awnings are in good order and repair, and are of such kind as have customarily been constructed, and allowed by the city to exist, time out of mind, and that they offer no obstruction to the full and free enjoyment of the streets and sidewalks.  The contention of petitioners, therefore, is that it would be inequitable, unjust and oppressive for council now to be allowed to capriciously revoke the license thus conferred, and, irrespective of any necessity for so doing, to summarily destroy their property, without compensation, and without even notice to them, or an opportunity to be heard upon the question of removing their awnings.  The defendant, though not conceding that the awnings of petitioners were erected, or have been allowed to remain, under its express permission, replies that even if licenses were granted, they could be revoked at pleasure, and that in the exercise of the police powers with which the municipal authorities are vested, the awnings could be removed summarily, without notice to the owners.  It is quite certain, from the record, that if the awnings involved in this controversy have any rightful existence, it can be accounted for only on the assumption that they were erected under license, either express or implied, from the city government, and no matter how long they have existed, their continuance must be referred to the original license, or to a renewal or repetition of the same.  The question, therefore, is: Can the doctrine of estoppel, under these circumstances, be invoked to prevent the city authorities from removing encroachments which, undoubtedly, as an original question, they had full power to prevent; or, in other words, is the license to erect and maintain these awnings perpetual and irrevocable?

In answer to this question, we will, in the first place, remark that no express legislative authority has ever been conferred upon the city government to grant the

right to erect and perpetually maintain awnings over the sidewalks of the city; and this being so, that such authority has never existed. The municipal government of Augusta, irrespective of the special act of 1814, has, we presume, as the authorities of most cities have, the power to regulate and control the streets and sidewalks. Beyond question, the City Council of Augusta has, by virtue of that special act, an express and clear legislative right to remove obstructions and encroachments on the streets. This right was wisely conferred for the benefit of the public, to whom the streets and sidewalks really belong, and the city council cannot, in the absence of clear and unequivocal authority from the legislature, perpetually deprive itself of this right by ordinance, contract or otherwise. Public policy forbids that a city government should be allowed to part with any of its powers the exercise of which may be necessary to secure and conserve the public welfare; and any violation of this policy necessarily tends to an impairment of the usefulness and efficiency of the city government, and consequently to defeat, in a greater or a less degree, the very purposes for which it was created. In the absence of a clear grant of power from the legislature, the municipal authorities can do nothing amounting, in effect, to the alienation of a substantial right of the public. In a case like that of *Laing* v. *The Mayor and Council of Americus*, 86 *Ga.* 756, the applicability of the doctrine here announced is clear enough, because there the obstruction placed upon the sidewalk was, without doubt, a nuisance *per se;* but for the purposes of the present case, it makes no difference whether an awning is a nuisance *per se* or not. In Hawkins v. Sanders, 45 Mich. 491, it was held that a wooden awning over a sidewalk in front of a store was not. There can, however, be no doubt that an awning of any kind, extending over a sidewalk and supported by posts, is an

encroachment, and to some extent, at least, an obstruction; and it has been shown, we think, that the municipal government of Augusta, has never had any authority to grant permission to any of its citizens to erect and maintain in perpetuity any such encroachment or obstruction in that city. It is equally true, we think, that no lapse of time could render valid, so as to become irrevocable, a license which the city never had the power to grant in perpetuity. Although, in *The State of Tennessee* v. *Virgin*, 36 *Ga.* 388, this court held that, as to actions against a citizen, the latter could, under the act of 1856 (Code, §2925a), plead the statute of limitations, and that in Georgia the maxim of "*Nullum tempus occurrit regi*" had been abrogated, we are quite certain that no statute of limitations or prescription of any kind could so operate as to abridge in any manner the exercise of the legitimate legislative powers of the State conferred by the people for the common welfare of all. In this sense, at least, the kindred maxim "*Nullum tempus occurrit reipublicæ*" is still of force, and it is applicable to a city council, so far as its legislative powers conferred upon it by statute are concerned, as well as to the State itself, the city government being, in this respect, a part of the lawmaking power of the commonwealth. In this country the people are the rulers,— the source of all power,—and it cannot be sound doctrine that their servants in any lawmaking department can, by the lapse of time, any more than by their own action, be deprived of powers the exercise of which are essential or necessary to the proper performance of their duties and obligations to the public.

2. Having shown that licenses granted by the city council of Augusta to erect awnings, whether such licenses were express or implied, could not for any reason be irrevocable, we will now state and briefly discuss another principle applicable to the facts of the present

case. We think that where citizens of Augusta, with the permission of the city authorities, erected awnings—which, of course, involved expense,—there would be an equitable estoppel against a needless or capricious revocation of the permission until after the lapse of sufficient time to allow the parties incurring the expense to realize, in the use and enjoyment of their awnings, a fair return for their outlay. Whatever may be the law in other jurisdictions, it is now well settled in Georgia that, as between private persons, a parol license, though primarily revocable, is not so when the licensee has executed it, and in so doing has incurred expense. This doctrine was announced as far back as 3 *Ga.* 82, in *Sheffield et al.* v. *Collier*, and again in *Mayor &c. of Macon* v. *Franklin*, 12 *Ga.* 239, in which Judge Nisbet said: " The rule is as stated, that a parol license is revocable, but it has some exceptions. If the enjoyment of it must be preceded necessarily by the expenditure of money, and the grantee has made improvements or invested capital in consequence of it, it becomes an agreement for a valuable consideration, and he a purchaser for value." Pages 242, 243. See also *Winham, King & Aldridge* v. *McGuire*, 51 *Ga.* 578, and *Southwestern Railroad* v. *Mitchell*, 69 *Ga.* 114. There are other cases decided by this court, to the same effect, but the above will suffice.

The quotation from Judge Nisbet's opinion is followed by these words : " In such cases, the books say it would be against all conscience to permit the grantor to recall the license as soon as the benefit expected from the expenditure is beginning to be derived. The spirit of the principle thus announced is, within the limits indicated, applicable to the case before us. The city council could subserve no interest of the public by allowing awnings to · be erected, and then, immediately, without reason, and in mere caprice or wantonness—if such a thing be

conceivable,—requiring them to be removed. Such a course would be harsh and unjust, without excuse, and unnecessary. This would be true even under the ordinance of 1888, in which the city council expressly reserved the right to revoke at pleasure any permission which might be given for the erection of awnings. This reservation would not confer upon the city authorities any right by granting a citizen permission to erect an awning to mislead him into the belief that he would be allowed to enjoy it for at least a reasonable time, and then wantonly force him to destroy a structure to erect which he had, on the faith of this belief, incurred expense. It is also established and sound law, however, that a verbal license, even when fully executed, is not necessarily forever irrevocable. In *Wingard* v. *Tift*, 24 *Ga.* 179, it was held that a verbal license to erect a dam and fish-traps was not a license to renew the same after they had been washed away by high water. In that case Judge BENNING said, on page 182: " There is no dispute that such a license is revocable if its revocation does no damage to the person to whom it has been granted. Therefore, if Tift had chosen to revoke this license before the first dam and traps had been put in, he might have done so. In that case, the license would not have been the means of putting Wingard and Floyd to any expense. So, Tift might revoke the license at any time after the dam and traps had been swept away, for then things would stand just as they stood in the beginning." Following this doctrine, and remembering, for the reasons already given, that the city authorities are not to be held as strictly to the terms of licenses granted by them as private persons would be, we are satisfied that persons who have been allowed to reap substantially the benefits of the money they have expended in putting up awnings, can have no cause of complaint that the city thereafter revokes the permission

given to erect them.    After they have enjoyed this bene-
fit, we see no reason why, under the broad powers con-
ferred by the act of 1814, the city government, in pur-
suit of a policy to have all awnings in the city con-
structed of such materials and in such style as is deemed
proper and suitable under existing conditions—having
reference to the convenience of the public, the sightli-
ness of the streets, and other proper and reasonable
considerations,—may not cause to be removed old awn-
ings which had already been permitted to stand for
many years.    When the time has arrived when the city
may fairly and in good faith revoke existing licenses to
maintain these structures, the municipal authorities may
have them removed as encroachments upon the streets
no longer authorized; and if the owners, after reason-
able and fair notice, fail or refuse to remove them, the
city may have them removed at their expense.

We again call attention to the fact that as to the awn-
ings involved in this controversy, the petition alleges
that the one last erected was put up more than nine
years ago, and that most of them have been in exist-
ence for more than twenty years.    It is not stated that
any particular awning was rebuilt. .

In the absence of evidence to the contrary, we think
it a fair presumption that those who erected the awnings
have been fully compensated, by the use and enjoyment
of the same, for all expenditures made upon the faith of
the permission or license obtained from the city.    There-
fore a resolution or ordinance revoking the license is
*prima facie* valid, and consequently its enforcement
should not be enjoined.

We have not overlooked the fact that in one of the
affidavits presented in support of the petition, and sworn
to by a number of affiants, the following loose and gen-
eral statement occurs : " The awnings of deponents have
been where they now are (except when replaced by new

material for the purpose of repair and reconstruction) for a period of from two to twenty-five years." It is obvious, however, that petitioners are entitled to no relief greater than would be authorized by the allegations of their petition ; and besides, a mere general averment in the affidavit to the effect that some of the awnings have been erected for only two years, without specifying how many, where they were situated or to whom they belonged, would not authorize the court to restrain the city authorities generally from enforcing the ordinance, the *gravamen* of the petition being that the injunction was sought in order to protect awnings the most recently erected of which had been in existence for at least nine years.     *Judgment reversed.*