## ATLANTA TERMINAL COMPANY *et al.* v. AMERICAN BAGGAGE AND TRANSFER COMPANY.

| | |
|---|---|
| 125 | 677 |
| s128 | 755 |
| s128 | 756 |
| s128 | 757 |
| s128 | 763 |
| s128 | 764 |
| s128 | 774 |

1. A railroad company as a common carrier is a public institution only in a qualified sense.

2. (Per ATKINSON, J.) The duty of transportation by a common carrier of a parcel as baggage is incidental to and grows out of the contract for the transportation of one as a passenger, and does not arise until the person tendering such parcel for carriage has procured the right of transportation as a passenger.

3. (Per ATKINSON, J.) Until such right has been procured, a common carrier is under no duty, public or private, to receive a parcel from any one to be transported as baggage.

4. (Per Atkinson, J.) (A corporation acting for a common carrier in the matters of providing a baggage-room, and of receiving and checking baggage for all the patrons of the common carrier, has a right to conduct in its baggage-room an independent private enterprise by which it receives and keeps on storage parcels of prospective passengers until they are called for by the passenger after he has obtained his ticket or other evidence of the right of transportation, and then, upon exhibition of the same, to check the parcel as baggage to be forwarded to the point designated by the ticket.

5. The operations under the private enterprise thus conducted, however, must be subordinate to the service which must be rendered to persons who tender parcels to be checked as baggage, duly accompanied by tickets or other evidence of the right of transportation.

6. If such corporation contracts with a second corporation to allow it the exclusive right to carry on such private enterprise in its said baggage-room, but complies with its duty to a third corporation as a member of the public generally, by immediately receiving and checking such parcels as may be tendered by it, accompanied by a ticket or other evidence of the right of transportation, and giving such third corporation, as to such parcels as are attended with tickets, the preference over the parcels tendered by the second corporation to go upon storage, the first corporation does not violate any duty to the third, and the third corporation would have no right to challenge the legality of the contract between the first and second corporations, or to enjoin the operations thereunder.

7. The trial court did not commit error in any of its rulings complained of in the cross-bill of exceptions.

8. The court did commit error in granting the temporary injunction complained of in the main bill of exceptions.

Argued January 17,—Decided May 24, 1906.

Injunction. Before Judge Pendleton. Fulton superior court. October 13, 1905.

The Southern Railway Company, the Atlanta and West Point Railroad Company, and the Central of Georgia Railway Company are each engaged in running and operating commercial railroads for the purpose, among others, of carrying passengers. Their passenger-trains enter and depart from the same depot in the city of Atlanta. Through that depot the travel and consequent handling of baggage is very great. None of them has made provision in that city for ingress and egress by passengers with their baggage to and from its trains except through this depot, which is owned, controlled, and operated by the Atlanta Terminal Company. All of the railroads have contracts with that company, by which it undertakes safely and with all reasonable convenience to accom-

modate their trains on suitable railroad-tracks in a suitable depot, and in like manner to accommodate the traveling public as to passengers and baggage in reaching and departing from their trains through such depot. They all have rules, applicable in the city of Atlanta, which require persons to have tickets before admission to the trains, and before receiving parcels as baggage, or parcels to be checked as baggage. The Atlanta Terminal Company is a separate and distinct corporation, chartered under the law which governs the grant of charters to railroad companies. In the exercise of its charter powers, it acquired the site for the depot, and constructed thereon a depot building and grounds, well equipped with railroad-tracks for the handling of trains, and with other conveniences for the public in reaching and departing from the several trains, and with like conveniences for the handling of baggage for passengers. In the depot building there are baggage-rooms sufficient to accommodate all the public, to which outgoing baggage is carried to be checked and delivered upon trains, and from which incoming baggage is received by passengers or their agents. The means of the delivery of baggage from the baggage-rooms to the trains, and from the trains to the baggage-rooms, is by elevator and other modes provided by the Terminal Company. There are no means by which a passenger can deliver and receive his baggage, except through the baggage-rooms. These rooms are not immediately on any street, but may be reached by a driveway made especially for the use and convenience of vehicles in delivering and receiving baggage for passengers. With reference to the handling of baggage under the particular conditions above outlined, the Atlanta Terminal Company, being the corporation which, in place of the railroads, was undertaking to serve the public in the manner already indicated, entered into a contract with the Atlanta Baggage and Cab Company, wherein it was provided, among other things, that the company last named should have "exclusive control of *checking baggage* from and to all points in the city of Atlanta from and into the baggage-rooms" of the Atlanta Terminal Company. By virtue of this clause in the contract it was the intention of the Terminal Company that the Cab Company should have the privilege, when employed by a prospective passenger to transfer a trunk to the depot, to send its agent to the residence or hotel of said prospective passenger, and upon the trunk at such hotel or resi-

dence place a private "claim-check," giving to the owner a duplicate of the same, the trunk then to be hauled to the depot and placed within the baggage-rooms. Later, when the passenger would come to the baggage-rooms and present his railroad ticket or other evidence of the right to transportation over any of the lines of railroad entering the depot, with his said claim-check, his trunk would be immediately identified and the claim-check taken up, and, in lieu thereof, a railroad-check given for the trunk as baggage to be forwarded to the point of destination on the route designated by his ticket. Such operations were actually conducted under said contract. The arrangement is greatly to the convenience of the traveler, and enables him to send his baggage in advance to the depot, and have it stored where he can readily obtain it within the depot building upon his arrival with ticket for departure on the train. That is the service afforded the public where the Cab Company is patronized. But if a prospective passenger should send his trunk by a private conveyance, or by the agency of some person or firm other than the Cab Company, the trunk would not be received on storage at all, unless it was accompanied by the railroad ticket or other evidence of the right of transportation of the prospective passenger. In such case the trunk would not be admitted into the building, and the passenger, after procuring his ticket, would, by himself or agent, be required to produce the baggage from outside the building, directly into the baggage-room; whereupon it would be received as baggage and stored until the departure of the first train over the route indicated by the ticket, and then forwarded to the point of destination.

The American Baggage and Transfer Company is a competitor of the Atlanta Baggage and Cab Company in the business of hauling baggage and prospective passengers to and from the depot, and is not allowed the "claim-check" privilege above described, but is required, before baggage will be received from it into the baggage-rooms, to present a railroad ticket or other evidence of the right of transportation over one of the lines of railroad entering the depot. This company filed its suit against the Atlanta Terminal Company and the Atlanta Baggage and Cab Company, contending that the exclusive contract between the defendants, and the operation thereunder as before described, were unlawful as being unjust discrimination against the public generally and the plaintiff in par-

ticular in a matter relating to a public service; that such discrimination had resulted and would continue to result in injury and damage to the plaintiff; and that the same was forbidden by the constitution of this State (art. 4, sec 2, par. 4), because the effect of the contract was, and the same was intended to have the effect, to defeat or lessen competition in business and to encourage monopoly. The defendants contended, that the contract was not an unlawful discrimination against the plaintiff or the public; that the operations under it were lawful, and justified by the right of all persons to deal with their private property in such manner as they deem proper; that the grant by the Terminal Company to the Cab Company of the exclusive claim-check privilege was a mere favor disconnected with the service of the public, and one which it had a right to grant, to the exclusion of all other persons; that the plaintiff had no right to complain because the Terminal Company had not seen fit to extend that privilege to the plaintiff; that if the privilege was an unjust discrimination against any one, it could only be such as against an actual or prospective passenger.

The plaintiff further contended that the agents of the Terminal Company discriminated in favor of the agents of its codefendant and against the agents and servants of the plaintiff, in the matter of giving the one preference over the other in the service at the baggage-room; and complained of discourteous treatment by the agents of the defendant, relative to the handling of baggage, all of which tended to prevent a proper discharge by the agents of the plaintiff of its duties to its customers. Upon these contentions the defendants joined issue, and there was conflicting evidence. The plaintiff offered certain evidence which was excluded as irrelevant and immaterial, as follows: Parts of the affidavit of C. A. P. Ebbert: (a) "The said Terminal Company allows the Atlanta Baggage & Cab Company an office for the conduct of its business within the Terminal station, but it does not allow this privilege to deponent's company, which has its main office on Madison avenue, directly opposite the Terminal station." (b) "The result of the denial to deponent's company of the privileges of the claim-check system is to tremendously handicap it in the baggage-transfer business, and to practically prevent it from being a serious competitor of the Atlanta Baggage & Cab Company. The members of the traveling public wish to get their trunks checked as promptly and

with as little inconvenience as possible; and the fact that by these arrangements a patron of the Atlanta Baggage & Cab Company is afforded a secure protection for his trunk, and the immediate means of identification without personal examination of the trunk, tends to force the members of the traveling public to patronize the Atlanta Baggage & Cab Company in preference to deponent's company." (*c*) "All of the preferences given the Atlanta Baggage & Cab Company, as above set out, result in an unjust discrimination in favor of said company against deponent's company, so that it is utterly impossible for deponent's company to fairly compete with the said Atlanta Baggage & Cab Company." (*d*) Part of the affidavit of J. P. Moody: "Deponent further says that during the month of September, for one day, the American Baggage & Cab Company made use of the claim-check system, under the same terms and conditions under which it is habitually used by the Atlanta Baggage & Cab Company, and, to deponent's knowledge, on that day the trunks transferred by the American Baggage & Cab Company were handled at the baggage-room with less delay, and with less inconvenience to all of the employees within the baggage-room, than during any other day in which the American Baggage & Transfer Company transacted any business in the baggage-room." The plaintiff offered numerous affidavits substantially to the effect that the affiants were familiar with the manner of conducting the baggage-transfer business at the railway stations in the cities of Savannah, Knoxville, Memphis, Boston, New York, New Orleans, Baltimore, and Washington, and that in each of the cases named no discrimination was made against any transfer company or private individual in regard to storing baggage at the station in advance of its being checked over the railroad, but that such storage privilege was accorded alike to all agents handling the baggage of prospective passengers. These portions of the affidavits were ruled out as irrelevant. The plaintiff offered an amendment to the petition, relating to the organization of the Atlanta Terminal Company, charging that its stockholders were officers and agents of the various railroads at the depot of that company. The amendment was rejected as irrelevant and immaterial. The court also refused to grant an order requiring the defendant Cab Company to produce its stock-book, "or such parts thereof as might be

relevant to the issue, to be introduced in evidence," in pursuance of a regular notice to produce, served upon it by the plaintiff.

After a hearing the court "ordered that the Atlanta Terminal Company be enjoined from conducting its business of receiving baggage for transportation by the claim-check system in such a way as to allow the Atlanta Baggage & Cab Company to put baggage hauled to its station for immediate transportation in its baggage-room in advance of being checked, while it denies the American Baggage & Transfer Company the right to likewise put baggage hauled by it into said baggage-room which is intended for immediate transportation." To this ruling the defendants excepted. The plaintiff filed a cross-bill of exceptions, assigning error upon the rulings already stated, and complaining of the judgment of the court just quoted, for the reasons, among others, that the judgment did not go far enough, but should have rendered all the relief prayed for by the plaintiff; that the court should have held that the contract made between the defendants, giving the Atlanta Baggage & Cab Company the exclusive right to place the trunks of its patrons within the baggage-room of the Terminal station before the presentation of the railroad ticket or other evidence of the right of transportation, and the allowance to the Atlanta Baggage and Cab Company of the exclusive privileges arising under the claim-check system, was illegal and void; that the Terminal Company should have been enjoined from refusing to accept and place within its baggage-room trunks handled by the plaintiff for its patrons, whenever presented; that the defendants should have been enjoined from refusing to allow the plaintiff to put trunks of its patrons into the baggage-room at any time, when presented with claim-checks issued by plaintiff; and that the court should have unconditionally issued an injunction restraining the defendants from the continuation of the acts complained of.

*Herbert J. Haas, Rosser & Brandon,* and *Dorsey, Brewster & Howell,* for Atlanta Baggage and Cab Company and Terminal Company. No monopoly: Civil Code, §4, par. 1; 6 Am. & Eng. L. 925; 20 Ib. 846; 107 *Ga.* 644; 109 *Ga.* 721; 4 Bl. Com. 159; 5 Heisk. 529; 52 Fed. 104, 118; 4 Bac. Abr. "Prerogative;" 10 How. St. Tr. 386, 425; 2 H. Bl. 463, 500; 12 Curtis, 562; 43 Ark. 42 (51 Am. R. 550) ; 11 Coke, 84; Eddy, Comb. 28; 199 U. S. 279; 39 S. W. 1079; 3 Can. Ry. Cas. 203; 85 Fed. 359, and cit. No

injury to public, lessening of competition, or restraint of trade: Spell. Tr. & Corp. 158; 131 U. S. 97; 24 Atl. 287; 24 Am. & Eng. Enc. L. 842, 855; 60 Am. R. 469; 85 Fed. 282; 7 Bing. 735; App. Cas. 535, 567; 30 C. C. A. 174; Civil Code, §§ 769, 3668; 65 *Ga.* 160; 74 *Ga.* 684; 86 *Ga.* 251; 104 *Ga.* 437; 121 *Ga.* 48; 122 *Ga.* 646; 116 *Ga.* 866; 84 S. W. 502; 37 So. 134; 118 Fed. 169. Plaintiff can not maintain the action: Acts 1896, pp. 68, 70; Civil Code, § 4940; 115 *Ga.* 429; 92 *Ga.* 159; 111 *Ga.* 760, and cit.; 116 *Ga.* 374, and cit.; 87 *Ga.* 386; 69 *Ga.* 746; 72 *Ga.* 205; 113 *Ga.* 462; 123 *Ga.* 867; 84 *Ga.* 5; 9 Am. St. R. 664; 64 L. R. A. 811; 105 U. S. 174; Jagg. Torts, 87. Terminal Company not a common carrier: 3 Pac. 716; 17 Wall. 376; 33 Fed. 412; 10 Mo. Ap. 132; 68 Pac. 82. Private rights and public duties of railroad companies, as to passengers and others: Civil Code, §§ 2280, 2281, 2167, par. 7; *Ga. R.* 12/217; 25/61; 58/461; 69/827; 80/19; 116/266; 103/40; 75/316, and cit.; 117/923; 119/90, and cit.; Ell. R. §§ 2, 33, 199, 1409, 1576, 1578, 1651; Bald. Am. R. L. 335; 3 Am. & Eng. Enc. L. 543; 5 Ib. 486; 2 Pars. Con. 195; 61 Am. St. R. 68; 64 Ib. 290, and cit.; 54 Ib. 319; 76 Ib. 899, and cit.; 44 Ib. 474; 41 Am. Dec. 465; 31 Vt. 79; 14 C. C. A. 257; 20 Ib. 529, and cit.; 120 Fed. 215; 8 R. R. R. 202, and cit.; 46 Am. R. 142, and cit.; 35 Ib. 450; 73 Am. Dec. 337. No duty to store baggage: Ell. R. §§ 1403, 1409, 1479, 1653; 20 C. C. A. 529, and cit.; 81 Am. Dec. 718; 97 Am. St. R. 87; 76 Ib. 899; 17 Atl. 148; 94 U. S. 113. No duty of railroad to dependent services: 117 U. S. 1; 139 U. S. 79; 2 Int. Com. R. 792; 10 Ib. 360; 65 Fed. 39, and cit.; 2 Fed. Cas. 892; 13 Ib. 443; 57 C. C. A. 362, and cit.; 57 Atl. 224; 49 Atl. 965; 81 S. W. 111; 47 L. R. A. 532; 50 Ib. 723, and cit.; 52 Ib. 418; 68 Ib. 792; 147 Mass. 35 (9 Am. St. R. 661); 19 Atl. 144; 41 Atl. 246; 7 Met. 596; 31 Vt. 79; 149 Pa. St. 249; 27 A. & E. R. Cas. 125; 11 Pac. 686; 16 S. E. 392; 93 Ia. 436; 27 N. Y. Supp. 185; 64 Ib. 781; 74 Hun, 124; 1 C. B. N. S. 423,499; 2 Ib. 702; 18 C. B. 46; 1 Ry. & Can. Cas. 58; 1 Ry. & Can. Tr. Cas. 56 (2 Red. 202). Remedy, if any, by mandamus; not injunction: Civil Code, § 4922; *Ga. R.* 75/782; 102/563; 103/557; 105/494; 115/340; 60/233; 91/210; 117/555; 8 Am. R. 195, and cit.

*Arnold & Arnold* and *John L. Hopkins & Sons*, contra, cited, beside some of the cases in the foregoing list, Hutch. Car. 297; 7 L. R. A. 302; 45 Ib. 427; 64 Ib. 817; 3 Am. & Eng. Enc. L. 543;

119 *Ga.* 90; Civil Code, §§2268, 2278, 2894, 2918, 4841 et seq., 5800; 18 S. W. 50; 14 Ib. 106; 18 Am. R. 754; 8 L. R. A. 753; 10 Ib. 819 (47 N. W. 667); 16 Enc. Pl. & Pr. 896; 120 *Ga.* 974; 2 *Ga.* 349; 12 *Ga.* 217; 74 Ill. 116; 19 Ill. 556; 19 Wend. 251; 10 Ohio, 145; 5 Rawle, 179; 2 Bosw. 589; 6 Cyc. 369, 435.

ATKINSON, J. (After stating the facts.)

1. The several railroads which enter the Terminal station in Atlanta are public institutions only in a qualified sense; that is to say, they are open to engagement by and are bound to serve all the public, and during the term of engagement are public institutions as to those who have called them into service. Relatively to persons not so engaging and calling them into service, they are private institutions, and, as private corporations, may conduct the corporate business. In other words, the public character of the corporation as a common carrier lies dormant until quickened into activity by the requisition of some member of the public who demands of it the performance of some duty enjoined upon it by law in favor of him who makes the demand; and immediately upon the performance of that duty, it again, as to such person, assumes the condition of an ordinary private corporation. A railroad company, in its relation to a private person, is, in this sense only, a public corporation. Of course, it owes many duties to what is called the public in a collective sense, but with these duties we are not now to deal. See, in this connection, the opinion of the court, and citations, in Donovan *v.* Penn. Co., 199 U. S. 279.

2, 3. In this suit, the public as such does not complain. The cause of action is alleged to be that of an individual, or rather another private corporation. That railroad companies are vested with the inherent power to make reasonable rules for the regulation of the particular business in which they are engaged, and which those persons using them must observe, is not now open to serious question. Indeed, without the power to make such rules and enforce them, there would be chaos and such utter confusion in the conduct of their business that they could neither meet their obligations to the individual, nor render satisfactory service to the public. Among the rules which are universally recognized as reasonable is one which requires persons, before entering trains (having seasonable opportunity to do so, to procure tickets or other evidence of the right of transportation. The ticket thus procured is the evi-

dence of the right of the person to passage on the vehicles of the carrier over the highway on which it has by law the exclusive right of passage.   The ticket primarily authorizes the person to ride upon the vehicles, but as an incident to that right, fixed by law, he has also the right to have carried certain apparel and other personal effects which the law denominates baggage.   From the rule just mentioned, it results that no apparel or effects become baggage until the traveller has qualified himself to become a passenger. The baggage right is only an incident, and does not exist before the establishment of the right upon which it is dependent.   Such being true, it is reasonable and well recognized that the carrier, after making provision for supplying tickets, may prescribe that before a parcel is received as baggage for a person, such person must have and present a ticket over the railroad to the agent of the railroad, who will, by virtue of the ticket, receive the trunk and give a check for it as baggage over the route designated by the ticket, and enter upon the ticket a memorandum to the effect that the right of checking baggage on that ticket has been exercised, and consequently exhausted.   Indeed, a railroad is under no private duty or public duty to receive a parcel as baggage before a right of transportation of the passenger has been established.   The railroad receives no pay for the transportation of baggage as such, and it is not a part of the business of the railroad to carry parcels as baggage, except as incident to the right of a passenger.   If it were an attempt to send the parcel by freight where charges were intended to be paid for the transportation of the parcel independently of the transportation of the passenger, the question would be entirely different.   If such rights as are above mentioned did not exist, and if such rules as above mentioned could not be enforced, confusion would be produced and loss of baggage would result, and the carrier, by imposition, could be unduly burdened with parcels for people other than passengers, and which ought not to go free as baggage.   Such imposition could be carried to such extent as to render the carrier unable to give its legitimate passengers the efficient incidental baggage service to which they are entitled.   If it should be that a public duty as to the reception of baggage existed before any relation was established between the prospective passenger and the carrier, it would be impossible to fix a time at which the duty commenced.   It would not do to hold that the duty

arose as soon as the person determined to go upon his trip; nor would it do to hold that it arose when he started for the railroad station; nor would it do to hold that it arose when the proposed passenger entered the depot of the railroad. If it should be so held, the proposed passenger could cause his parcel to be checked as baggage and forwarded without charge, and then change his mind and never purchase a ticket or pay for his transportation, or otherwise acquire the right to ride upon the trains. Or if one were so inclined, he could make a business of forwarding parcels, without ever intending to become a passenger. The only reasonable rule is that which really exists under the nature of the implied contract by which baggage is carried; that is to say, there must, as a condition precedent to the receiving of a parcel as baggage, be established the right of the proposed passenger to go as a passenger on the cars of the carrier. Numerous equally cogent reasons might be stated to sustain the reasonableness of such rules, but those already assigned will suffice to show that the rule in question is both sound and wholesome. Having the right to make such rules, and such having been made for the government of the service in the city of Atlanta, it follows, as a matter of both logic and law, that until they are complied with by one wishing to ride on the vehicles of the carrier, the carrier is not bound to receive him on its train or his baggage into its custody. There being no such duty until these conditions are complied with, it follows that the carrier is not a public institution as to any person, in respect of the matter now under consideration, until he brings himself into a public relation with it by complying with the conditions. When that is done, but not until then, is the dormant public character of the corporation as to such person aroused. The right to prescribe carries with it the right to enforce, and the right to enforce such rules negatives the idea of private or public duty arising from anything not permitted by such rules.

4. The claim-check system which is complained of in this case is founded upon a practice which wholly precedes the creation of the relation of passenger and carrier. It is the simple, matter of storage of parcels before the prospective passenger qualifies himself to become a passenger, and before he tenders his parcel to be checked as baggage. See *Kates* v. *Atlanta Baggage & Cab Co.,* 107 *Ga.* 636. That system has no relation to the duty of carriage

founded on the contract for passenger transportation. The issue of claim-checks is neither enjoined nor prohibited by law. It could not in any just sense be said that it is a violation of a public duty either to grant or to refuse claim-checks for his baggage to one who is not, but who expresses his purpose to become, a passenger. It must follow, therefore, that the practice under the claim-check system was not one of public duty. If not a matter of public duty, it is necessarily one of those things which a corporation is free to do or omit as it may choose, and surely a court of equity will not enjoin the doing or compel the performance of acts which the company may or may not do in its discretion. What has been said is true if the railroads themselves were directly dealing with the claim-check system. It is none the less true when the Terminal Company, the agent of the roads, deals with it. The obligation of the agent can not be greater than that of the principal. There would be no power in the agent to disobey the reasonable and lawful rules of the principal. What has been said is true if the prospective passenger were dealing directly with the railroad company, or its agent, the Terminal Company. It is none the less true because the dealing is with the Cab Company or the Transfer Company, which, as agent, drays for the prospective passenger. The agent of this kind does not himself attempt to travel, and under no view could have a greater right to the public service of the railroads or other terminal facilities than the principal, the prospective passenger whom he would serve. This brings us to the conclusion that the Terminal Company, which owns the terminal facilities, is under no duty, with reference to the practice under the claim-check system, to either of the baggage companies, and was at liberty to deal with either to the exclusion of the other, as a matter of common right. See, in this connection, opinions in the cases of Donovan *v.* Penn. Co., 199 U. S. 279; *Kales* v. *Atlanta Baggage & Cab Co.,* 107 *Ga.* 636; *Fluker* v. *Ga. R. Co.,* 81 *Ga.* 461.

5. The operations under the claim-check system, being by virtue of private rights, must be subordinate to the right of service by the Terminal Company in the performance of its duties to those who have established with the carrier a right of transportation as passengers. The agent of the common carriers, which is the Terminal Company in this case, could not, under the guise of the claim-check system, so conduct the business of receiving and for-

warding baggage as to discriminate unduly between persons entitled to the rights of passengers, nor in such manner as to interfere with the proper receipt and delivery of baggage which comes to it properly attended by a ticket or other evidence of the right of transportation. If the claim-check system interfered with that, it ought to be enjoined.

6. It is contended by the defendants in this case that there are ample means always at hand, and that the service is prompt and expeditious in the immediate, convenient, and safe receipt and checking of parcels when presented to be checked as baggage, accompanied by ticket or other evidence of the right of the owner to go upon the trains. The contention of the plaintiff upon this point is to the contrary; and there is some evidence to support both contentions. The baggage which is tendered with the ticket is entitled to a preference of receipt over that which is carried to the Terminal station to go on storage under the transfer-check system; and the Terminal Company, the agent of the carriers, should be held to a strict compliance with its duty, in seeing that the approach to the baggage-rooms is always accessible to those bringing trunks or parcels accompanied by tickets or other evidence of the right of transportation, and, upon the presentation of the same, to immediately check them as baggage into the baggage-room, and they may be enjoined from doing anything which prevents such accessibility, or such immediate service in the checking of parcels. To this end, the Cab Company would not be allowed to block the way, at the places of delivery into the baggage-room, with its vehicles, in delivering trunks and parcels under the claim-check system as distinguished from a delivery when accompanied by tickets or other evidence of the right of transportation. In other words, so long as the Terminal Company acts as the agent of the common carrier, it should subordinate its mere private contract rights and duties, growing out of the claim-check system, to the superior duty which the carrier owes to its passenger to provide for the safe, convenient, and expeditious handling of baggage. It is argued that under the claim-check system, after a prospective *passenger* has obtained his ticket or other evidence of the right of transportation, he is required only to tender such evidence of the right of transportation, with his claim-check, to the agent of the Terminal Company, at the front window within the building which contains the

baggage-room; which is a great convenience to the passenger; whereas, a person, after obtaining his evidence of the right of transportation, who does not patronize the company operating under the claim-check system, is required to go outside of the building and identify his parcel, and then tender the same with the ticket to be checked; that this transaction causes the *passenger* to incur the inconvenience of going out of the building, and sometimes the discomfort of going into the rain or other inclement weather, and sometimes causes the baggage to remain in the rain or to be otherwise exposed; that these conditions make a discrimination even as between the *passengers,* after the public relation has been established. This is clearly a discrimination which ought not to be permitted as against the passenger; but the passengers themselves do not in this case complain. This discrimination would not extend to the plaintiff company, which merely acts as the drayman for the purpose of carrying the prospective passenger's trunk to the Terminal station to be checked as baggage; for, in the supposed case, the discrimination did not begin against the passenger himself until he obtained a ticket. For like reasons, it would not begin against the drayman until the drayman had obtained a ticket to be presented with the trunk at the time of its tender for checking as baggage. Under the evidence, when the trunk is tendered accompanied by the ticket, it is immediately received and checked as baggage; and we hold that it should, as a matter of public duty to the drayman, be so received and checked when so accompanied by a ticket. Under these conditions, it will be observed that as soon as the public duty to the drayman arises, it is immediately complied with, and there is no violation of his rights. Without a violation of the right of the plaintiff company it certainly had no individual cause of complaint, no matter how flagrant may be the wrong to the prospective passenger. It is unnecessary to consider whether the contract between the two defendants is violative of the constitution of the State of Georgia, or is void for any other reason; because if the operation thereunder between those two companies does not violate any right of the plaintiff, the illegality of the contract and the operations of the two defendant companies thereunder are matters of no concern to the plaintiff. It would be in the position of one having no wrong to redress.

7. From what has been said, it is manifest that the evidence

which was offered, and was excluded, as complained of in the cross-bill of exceptions, was irrelevant and immaterial, and the court did not commit error in excluding the same, or in making the interlocutory order conform more strictly with the prayers of the petition, as complained of in the cross-bill of exceptions, or in refusing to require the production of the stock-books of the Terminal Company.

8. Likewise it follows that the court did commit error in granting the temporary injunction quoted in the record, which is complained of in the main bill of exceptions. We do not deem it necessary to discuss any other proposition in the case.

*Judgment reversed on main bill of exceptions, and affirmed on cross-bill. All the Justices concur, except Fish, C. J., absent.*

LUMPKIN, J. I concur in the judgment in this case, but I can not concur in all that is said in the opinion of my able and learned brother. It was decided in *Kates* v. *Atlanta Baggage & Cab Co.,* 107 *Ga.* 636, that "Relatively to passengers and their baggage, the duty of a railway company, in its capacity as a common carrier, begins with affording to them, and to all of them alike, proper and suitable facilities for entering depots to purchase tickets and take passage, and for checking baggage, and ends with affording to them like facilities for leaving such deposits and obtaining their baggage on presenting the checks therefor. The rights which the law in these respects secures to passengers may be exercised by them either in person or through their chosen agents." The possession of a ticket is a common evidence of an intention to travel on the train; but it will not do to say that no duty at all on the part of a railroad company to the prospective traveler arises until after the person intending to take passage has procured a ticket. This clearly appears from the foregoing quotation. Suppose a railroad company should assert that it had the right to discriminate between persons going to its station to take the train, until after the purchase of tickets, and that it should say that all who come to the station in its cabs, or those of a certain company, will be first admitted to the station and allowed the first opportunity to procure tickets and check baggage. Clearly this would be illegal, although such persons had not actually procured tickets. That some duty on the part of a railroad towards a person who goes to a station to take passage may arise before actual purchase of a ticket,

see the *Kates* case, supra, and also Baltimore & Ohio R. Co. *v.* State, 81 Md. 371 (32 Atl. 201); Norfolk & Western R. Co. *v.* Galliher, 89 Va. 639; Grimes *v.* Pennsylvania Co., 36 Fed. 72, 73; Allender *v.* C., R. I. & P. R. Co. 37 Iowa, 264, 267. The railroad company always has public functions which must be properly discharged. . Whether a particular person can claim that he is in a position where there is a duty to him, which he may enforce, depends on the facts. A railroad company can make reasonable rules relative to passengers and baggage, but it can not make arbitrary rules unjustly discriminating in reference to passengers or those who have established a relation with the company as passengers, whether they have actually procured tickets or not. In the case of *Kates,* supra, it was said by Mr. Justice Little, in delivering the opinion: "Receiving and discharging baggage is one of the duties of a public passenger-carrier, and the obligations before enumerated apply in full force in the receipt and discharge of baggage at the union passenger-station in the city of Atlanta; and if it should be found to be true that the defendant railroad companies, either in the receipt or delivery of baggage by their baggage-master or other agents, discriminated against any passenger or the agent of any passenger in the time or manner in which baggage was received or discharged either through a system of claim-checks or otherwise, such discrimination would be a palpable violation of their public duties, for which the law affords ample remedy by injunction and full redress in the nature of damages. So of injury to or undue interference with the baggage presented." In that case the issues of fact were found against the plaintiff. What the railroad companies can not do by themselves, if it interferes with the discharge of their public duties, they can not do by an agent, or through a contract with another corporation. I do not mean to say that the whole claim-check system, if it be in itself beneficial rather than injurious to the public service, would necessarily be enjoined, should improper use be made of it, unlawfully discriminating among the traveling public; but doubtless the discrimination might be enjoined upon application by a proper party.

If a railroad company violates its public duty to the injury of the traveling public, an action for damages will lie by a proper party plaintiff so injured, or remedy may be had by injunction or mandamus in a proper case; or probably the attorney-general might

proceed on behalf of the public. But this need not be discussed in the present case. The action here is not by one claiming to have been a passenger, or who sought to become a passenger; nor is it by any one shown to have a right to proceed on behalf of the public. It is by a transfer or hauling company which desires equal rights as to claim-checks with another transfer or hauling company. Relatively to the plaintiff no duty to issue claim-checks is shown. Here again the decision in the *Kates* case is controlling, when it says: "If a railway company in good faith complies with the law as above laid down, it does not violate any public duty or deprive any citizen of any lawful right by granting to a single corporation or individual the exclusive right of entering its train to solicit the transportation of passengers and baggage, or by renting to such corporation or individual a portion of its baggage-room and conceding to it or him the privileges necessarily incident to the occupancy and use thereof, provided that so doing does not interfere with the exercise by any other person of any right which he may lawfully demand of the company as a common carrier." In a case recently before the Supreme Court of the United States (Donovan *v.* Pennsylvania Co., 199 U. S. 279) the question was not identical with the one here raised, and the hackmen there concerned were not carrying passengers or their baggage to the station, but desired to enter it, and there and along the sidewalk around the door to solicit custom; but the question of making contracts with one cab company and not with another, where not injurious to the public service, was elaborately discussed, and also the difference between the duty to serve the public on the one hand, and the alleged duty, on the other, to make similar agreements with all hackmen, for the private benefit of the latter. In the opinion by Mr. Justice Harlan (p. 295) it was said: "The record does not show that the arrangement referred to was inadequate for the accommodation of passengers. But if inadequate, or if the Transfer Company was allowed to charge exorbitant prices, it was for passengers to complain of neglect of duty by the railroad company and for the constituted authorities to take steps to compel the company to perform its public functions with due regard to the rights of passengers. The question of any failure of the company to properly care for the convenience of passengers was not one that, in any legal aspect, concerned the defendants as licensed hackmen and cabmen. It

was not for them to vindicate the rights of passengers. They only sought to use the property of the railroad company to make profit in the prosecution of their particular business. A hackman, in nowise connected with the railroad company, can not, of right and against the objections of the company, go upon its grounds or into its station or cars for the purpose simply of soliciting the custom of passengers; but, of course, a passenger upon arriving at the station, in whatever vehicle, is entitled to have such facilities for his entering the company's depot as may be necessary."

It was urged that the plaintiff here could assert the rights of passengers as to the matter involved. But this view does not appear well grounded, certainly not if the plaintiff was neither transporting a passenger, nor his baggage accompanied by proper evidence that it was such. I do not mean that the plaintiff's vehicles could be prevented directly or by indirect obstruction from entering lawfully upon the depot grounds to carry persons seeking to go there to take passage, or their baggage, or to carry and deliver their trunks accompanied by a ticket for the purpose of checking, or that in these respects improper discrimination could be made against it. But this is different from claiming in all respects equal privileges as to storage and the like with another cab and transfer company as a matter of private gain. I do not think that, under the decisions above cited, the plaintiff was so far clothed with the rights of passengers as to be entitled to the injunction which was granted.

I am authorized by Mr. Justice Beck to say that he concurs in the views above expressed.

COBB, P. J. I agree with my brethren in a great deal that has been said by each. There are, however, points of disagreement between us. I can best show where our views are in accord and where they diverge by a brief statement of my views in reference to the matter. A railway company in its capacity as a common carrier owes to persons about to become passengers a duty to afford to all alike proper and suitable facilities for the purchase of tickets and checking of baggage. A railway company may, within limits, fix the rights of persons about to become passengers, by the adoption of reasonable rules. Such a rule must, however, be general in its scope and uniform in its application. If a railway company adopts a rule that no baggage shall be checked until the passenger has sup-

plied himself with a ticket, and enforces it as to all, the rule and its enforcement can be properly upheld. A railway company would not be bound, under such a rule, to receive for storage the baggage of a prospective passenger who had not procured a ticket. If, however, with such a rule in existence the railway company stores the baggage of one class of passengers without requiring a ticket, and refuses to store the baggage of another class of passengers under similar circumstances, it violates its own rule, in effect abrogates it, and adopts a new rule in regard to storage which must be followed in every instance. It is not compelled to store the baggage of any prospective passenger, but if it adopts the custom of storing for one class, it must accord this privilege to all similarly situated.

A railway company is allowed to employ its own agents, but it must see that its agent complies with the law and the rules of the company. It can not throw off a public duty imposed upon it as such, by employing an agent and allowing the agent to conduct the business of the company in such a way as to work a discrimination against those to whom the railway company in its public capacity owes a duty. In the present case it was permissible for the railway companies to employ the Terminal Company and turn over to it the discharge of those duties relating to the baggage of passengers. It was also permissible for the Terminal Company to employ in like manner the defendant Cab Company, and turn over to it the discharge of its duties which it had undertaken to perform for the railway companies. So far as the baggage of passengers is concerned, the defendant Cab Company owes the same duties that the railway companies owed in the first instance. The defendant Cab Company as to its own business, independently of the duties of the railway companies it was performing, is entitled to transact its business as it deems proper, and as is consistent with the law. The defendant Cab Company could, as to its customers, adopt a system of claim-checks, and follow this system as to one class of customers and not as to another. That is, it could transact its own business in just such a manner as it deemed proper in this respect. But as the representative of the railway companies, it would not be allowed this latitude. If it accords to one person about to become a passenger the right of storage in the baggage-room set apart to the discharge of its duty to the railway companies, then it must accord to every other passenger under similar circumstances the same

right. The defendant Cab Company occupies a dual position. It is a cab company entitled to attend to its own business in just such a way as it sees proper. It is a representative of the railway companies in regard to the baggage of passengers and prospective passengers. So far as its own business is concerned, it may have the right to discriminate between individuals and classes. As to the the business of the railway companies, which it has undertaken to carry on, this power to discriminate does not exist. The defendant cab company may rent a storeroom from the Terminal Company or the railway companies, and in the same building in which these companies carry on their public business. The business in the storeroom so rented may be conducted in just such a manner as it sees proper. But the business conducted in the baggage-room of the railway companies, whether set apart by the railway companies directly or whether as a result of a contract between the railway companies and the Terminal Company and the defendant Cab Company, can not be carried on either by the Terminal Company or the defendant Cab Company in such a way as to work a discrimination between those who are about to become passengers on the trains of the railway companies. There is nothing in this view which conflicts with the rule in the *Kates* case. Under the facts in that case, the storage-room of the Cab Company while in the depot building was not the baggage-room of the railway companies. The railway companies did not permit any baggage in their baggage-room, either in the custody of their own agents or the agents of the Cab Company, until accompanied by a ticket. The business in the baggage-room of the company was conducted in strict accordance with the rule requiring a purchase of tickets as a condition precedent to checking baggage. A storage-room was merely rented to the Cab Company where it conducted its own business in behalf of its customers until each of them purchased a ticket which would give the right to have the baggage passed into the baggage-room of the railway companies. If the plaintiff in the present case had been a prospective passenger who had been denied the right to store his baggage in the baggage-room when other prospective passengers holding claim-checks were allowed this privilege, an injunction of the character indicated in the order complained of would have been properly granted. Under the ruling in the *Kates* case, however, as I apprehend it, a rival cab company engaged in

the business of hauling baggage would have no inherent right to complain. The suit must be brought by a prospective passenger who has been actually denied the right of storage accorded to the customers of the defendant Cab Company.

I concur in the judgment of reversal solely upon the ground that, under the ruling in the case referred to, the plaintiff was not in a position to complain of the palpable discrimination resulting from the claim-check system. The prospective passenger might complain in behalf of himself; and as the duty violated by the system was a duty owed to the public, the attorney-general, in his official capacity, as the representative of the entire public, might have a right to proceed in a court of equity to enjoin the continuance of such a discriminating system. Mr. Justice Evans authorizes me to say that he concurs in the views above presented.