JOHN COLE v. JOHN ROWEN.

*Railroad companies—Control of depot grounds—Assault and battery.*

1. A rule by which a railroad company reserves the right to assign places upon its own grounds to the different hackmen, and to exclude from such places others not assigned thereto, is reasonable, and a rule which the company has a right to enforce.

2. A depot master, who, acting under the direction of the railroad company, in attempting to enforce such rule, uses no more force than is necessary to eject a hackman from a place to which he has not been assigned, and which he is unlawfully attempting to occupy and hold, is not guilty of an assault and battery.

3. The following rules adopted by a railroad company for enforcement upon its own grounds are held reasonable:

"*a*—Location for omnibuses and hacks will be assigned to parties, who will occupy them while standing at the depot to get passengers.

"*b*—Drivers must take the stands which are assigned them, and will not be allowed to take places assigned to others.

"*c*—The positions assigned must not be occupied more than 20 minutes previous to the arriving time of passenger trains.

"*d*—Each driver must remain by his hack or omnibus when soliciting passengers.

"*e*—No hacks or omnibuses will be allowed to stand in the porch longer than necessary to load or unload passengers.

"*f*—The drivers of hacks and omnibuses will not be allowed in waiting rooms, except on business.

"*g*—Profane, obscene, boisterous language, or quarreling, will not be allowed on the depot grounds.

"*h*—Only one transfer wagon will be allowed to stand at the baggage-room, which will be the baggage-wagon that is hired by the railroad companies to transfer baggage between the different depots."

Error to Kalamazoo. (Buck, J.) Argued October 9, 1891. Decided October 30, 1891.

Case. Defendant brings error. Reversed, and no new trial ordered. The facts are stated in the opinion.

*Edwards & Stewart* (*Ashley Pond* and *Henry Russell,* of counsel), for appellant.

*Hawes & Luby*, for plaintiff.

LONG, J. This is an action for damages for assault and battery, and was commenced in justice's court, where plaintiff had judgment for $6 damages and $3.25 costs of suit. Defendant appealed to the circuit court for the county of Kalamazoo, where the cause was tried before a jury on March 6, 1891, and plaintiff had judgment for $40 damages and costs of suit. Defendant brings the case to this Court by writ of error.

The plaintiff was a hackman, and went to the depot of the Michigan Central Railroad Company in pursuit of his legitimate business of soliciting the carriage of passengers from the incoming trains to the hotels and private residences in the city. He was in the employ of a Mr. Waud, who owned the hack and outfit. Arriving at the depot on the day upon which the assault was committed, he took a place upon the depot grounds of the railroad company with his hack, and, upon being told by the depot master that that place had been assigned to another hack, he refused to yield the place. The defendant is the depot master at that depot. The depot grounds occupy the space covered by the railroad track of the Michigan Central Railroad Company in what was formerly a street, and which had been vacated for the construction of the railroad. The grounds also include the entire north part of block 15 in the city, bounded north by the vacated street, and south by an alley. The title to this north part of block 15 is in the railroad company, and these are the lands upon which the plaintiff entered and stood with his hack, and from which he refused to remove to another part of said grounds.

It appears that the railroad company on April 25, 1890, made certain rules for the management of its depot grounds, and for the regulation of hack and bus drivers

thereon, and for assigning stands for their vehicles in their business of soliciting passengers. These rules were promulgated by the depot master, who located the stands for the hack and bus men, telling each where to stand his vehicle. The stands located were indicated by numbers from 1 to 9, respectively, and 1 to 7 had been assigned and occupied by different hackmen prior to the occurrence complained of, and there was space yet left upon said grounds unassigned, which plaintiff might have occupied on that day. On September 15, 1890, plaintiff drove onto the grounds for passengers, and took possession with his hack of stand No. 3, which was not assigned to him, and which he knew had been assigned to another under the rules of the company. The defendant, the depot master, requested him to vacate the stand for a party who wanted and was entitled to it. This plaintiff refused to do, and the defendant pulled him from his hack, and ejected him from that place, offering to assign him another place upon the company's grounds, which plaintiff refused. It is apparent from the record that the defendant used no more force than was necessary to eject the plaintiff from that particular place. The defendant was acting, in thus ejecting plaintiff from that part of the grounds, under the rules of the railroad company. These rules were as follows:

"1. Location for omnibuses and hacks will be assigned to parties, who will occupy them while standing at the depot to get passengers.

"2. Drivers must take the stands which are assigned them, and will not be allowed to take places assigned to others.

"3. The positions assigned must not be occupied more than 20 minutes previous to the arriving time of passenger trains.

"4. Each driver must remain by his hack or omnibus when soliciting passengers.

"5. No hacks or omnibuses will be allowed to stand in

the porch longer than necessary to load or unload passengers.

"6. The drivers of hacks and omnibuses will not be allowed in waiting rooms, except on business.

"7. Profane, obscene, boisterous language, or quarreling, will not be allowed on the depot grounds.

"8. Only one transfer wagon will be allowed to stand at the baggage-room, which will be the baggage-wagon that is hired by the railroad companies to transfer baggage between the different depots."

The court below charged the jury that—

"It would be competent for the railroad company to make such a rule as is included in these,—that the hackmen should not come to the station for passengers earlier than twenty minutes before train-time. That rule would be good, and could be enforced. The company could also make a rule that the hackmen should not stand within a certain distance of the platform of the station. That rule would be good. But, without enlarging upon these, there is one rule which the court, as a matter of law, following what the court conceives to be the decision of the Supreme Court on the same matter, holds is not good, and that is the rule that hackmen should be assigned places at the platform for the receipt of passengers, and that these places assigned should be occupied by no others. This the court holds, as matter of law, is not good."

It appeared upon the trial that the plaintiff at the time of the assault was not engaged in making any disturbance, or using any boisterous, vulgar, or obscene language, and was in no way offending against the rules of good order and decorum. The only question for consideration, therefore, is whether the rule adopted by the company reserving the right upon its own grounds to assign places to the different hackmen, and excluding from those places others not assigned thereto, is a reasonable one, and one which the company had a right to enforce.

The court below was in error in supposing that the rules adopted by the railroad company, and which were

sought to be enforced by the defendant, were in conflict with the opinion of this Court in *Kalamazoo Hack & Bus Co. v. Sootsma,* 84 Mich. 194. That was an action of trespass against the defendant for unlawfully entering upon a piece of ground near the depot in question, the plaintiff claiming in that case to have leased that particular piece of ground, with the right to use it to the exclusion of all others; and it was held by this Court that the railroad company had no right to give to one hack and bus company the right to the use and occupancy of a portion of its depot grounds to the exclusion of others engaged in a like business, and that the railroad company could not arbitrarily admit one common carrier of passengers or freight to its depot grounds, and exclude all others, for no other reason than that it was for its own profit or pleasure to do so. In the present case it appears that under the rules adopted by the company these stands were fixed and numbered, and the different carriers assigned to their places, for the sole purpose of accommodating the traveling public in coming to and departing from the depot, and to prevent quarrels among the hackmen as to place, and the annoyance occasioned thereby. Before these rules were adopted, it appears that the hackmen came there with their vehicles at all times of day; sometimes left their hacks to stand a half day at a time, and leaving the depot grounds so foul that in hot weather it was almost impossible for people to pass on account of the odors; and the railroad company was compelled from time to time to remove the gravel to abate the nuisance.

The rules adopted were reasonable rules, and were intended by the railroad company to convenience the traveling public. They in no manner give place to one hackman to the exclusion of another, and they deprive

no common carrier of necessary approach to the depot grounds to carry on his business of carrier of freight and passengers. The rules touch and affect all alike. The mere fact that the railroad company fixes and determines the place where each particular hack shall stand is not a discrimination between hackmen, but is a necessary rule to prevent quarrels for place, so often seen among hackmen around depots. There can be no doubt that the railroad company has the right and authority to make and enforce all reasonable rules to restrain hackmen from committing offenses against good order on their grounds, and to regulate their conduct while there. *Com. v. Power*, 7 Metc. 596; *Markham v. Brown*, 8 N. H. 523. It must be held that the rules adopted and heretofore set forth are reasonable, and that the court was in error in holding otherwise. Inasmuch as it appears that the defendant acted under the direction of the railroad company, and was only attempting to enforce those rules and regulations, and that he used no more force than was necessary to eject the plaintiff from the place he unlawfully attempted to occupy and hold, the court should have directed the jury to return a verdict in favor of the defendant.

The judgment of the court below must be reversed, with costs of both courts. No new trial will be ordered.

The other Justices concurred.