DINGMAN v. DULUTH, SOUTH SHORE & ATLANTIC RAILWAY CO.

1. CARRIERS—RAILROADS—DISCRIMINATION—BAGGAGE.

A carrier of passengers may agree with one of several persons engaged in the business of transferring baggage and passengers by vehicle at the terminus of the railway, to furnish a pass on its trains and permit him to solicit business thereon, refusing like privileges to his competitors, without violating the statute forbidding discrimination.[1] 2 Comp. Laws, § 6266.

[1] As to discrimination by carrier as to hackmen and other solicitors of patronage at depots, wharves, etc., see note in 13 L. R. A. 848; and note in 16 L. R. A. (N. S.) 777.

2. SAME.
    The carrier has a right to provide facilities for the transfer of
    baggage for its passengers, and to protect them against an-
    noyance from solicitation of competing agents.

3. EVIDENCE—INTERSTATE COMMERCE—JUDICIAL NOTICE.
    The court may take judicial notice of the fact that the Duluth,
    South Shore & Atlantic Railway Company is engaged in in-
    terstate commerce.

4. CARRIERS—INTERSTATE COMMERCE LAW—DISCRIMINATION.
    Only undue or unreasonable discrimination is unlawful with-
    in the provisions of 24 U. S. Stat. 379 (U. S. Comp. Stat. 1901,
    p. 3154).

Error to Chippewa; Steere, J. Submitted January 13,
1910. (Docket No. 25.) Decided February 1, 1911.

Case by Walter Dingman against the Duluth, South
Shore & Atlantic Railway Company, for the unlawful
discrimination against plaintiff's business. A judgment
sustaining a demurrer to plaintiff's declaration is reviewed
by plaintiff on writ of error. Affirmed.

*F. T. McDonald* and *M. M. Larmonth*, for appellant.

*A. B. Eldredge* and *A. E. Miller*, for appellee.

BROOKE, J. Plaintiff, a resident of Sault Ste. Marie,
in this State, commenced suit against defendant by decla-
ration, alleging: That he had been engaged for several
years in the business of carrying passengers and their
baggage for hire, being the owner and operating a num-
ber of buses and wagons used for that purpose, and
principally in carrying passengers and baggage to and
from the passenger trains of railroads having their
termini in the city of Sault Ste. Marie; that defendant is
a common carrier, engaged in the business of carrying
passengers and freight between various points in the
State of Michigan and the city of Sault Ste. Marie, and
it was the duty of defendant to afford equal facilities to
all persons operating bus and baggage wagons, to solicit

passengers on its trains and at its depots, and not to discriminate, or allow undue or unfair advantage to any one; that defendant, intending to injure him, has discriminated in favor of one Price Eagle engaged in a like business as plaintiff, by entering into an agreement with Eagle, August 1, 1904, whereby he and his agents are permitted to go upon defendant's passenger trains, and solicit passengers and baggage for his buses and baggage wagons, and for that purpose has been given a pass to be carried free, on all trains between Soo Junction and Sault Ste. Marie, all within this State, which said Eagle has continued to do since that date, and the same privilege has been continuously denied to plaintiff. The declaration further alleges that by reason of the exercise of this privilege by Eagle he has suffered great damage, etc. Defendant demurred to this declaration, giving several reasons. The court sustained the demurrer.

To give to section 6266, 2 Comp. Laws, the construction contended for by plaintiff, would result in depriving the public of one of the most valuable privileges incident to public travel. That the privilege of dealing with a competent and trustworthy baggage agent is a valuable one, seems too obvious for argument. The traveling stranger is often ignorant of the location of termini or his destination, and the best means of transportation to and from the same. He is entitled to receive this information, and to receive it from one whose position upon the train is a guaranty that he is responsible and may be safely intrusted with the person or property of the traveler. In large cities, scores, nay hundreds, are engaged in the same business as is the plaintiff. To compel the railroad company to transport all persons who desired to solicit the transportation of passengers or baggage would, of necessity, result in the refusal of the company to carry any, and, as a consequence, the denial to the traveling public of a service of the greatest possible importance.

But suppose the railroad, instead of refusing to carry all, permitted two or more baggage agents upon its trains.

The conditions which would result from such a course would at once become intolerable. Rival agents would besiege the passenger for his business to his infinite annoyance, and, when he finally made a selection, he would have no means of knowing that he had chosen either a competent or responsible agency for its transaction. It may be urged that the passenger is subjected to the same annoyance upon his arrival at his destination. If this is so, it is because he voluntarily transacts his business at the depot, rather than upon the train. But the conditions at the depot are different from those upon the train. At the depot the competition for his business is ordinarily duly regulated and under the supervision of the police, a safeguard entirely wanting upon trains.

I have said this much as bearing upon the general aspect of the question, and the result to the public if the contention of the plaintiff should prevail. While these considerations are not controlling, they certainly militate most strongly against such a construction of the statute as would result in harm or inconvenience to the general public, unless that construction is forced upon us by plain and unequivocal language, or pertinent judicial determination. Neither, in my opinion, compel us to adopt plaintiff's contention.

The case at bar is not within the principle of the decision in *Kalamazoo Hack & Bus Co.* v. *Sootsma,* 84 Mich. 198 (47 N. W. 667, 10 L. R. A. 819, 22 Am. St. Rep. 693), relied upon by plaintiff. That decision itself is probably not in harmony with the weight of current authority. See, for a full discussion of the question, Beale & Wyman on Railroad Rate Regulation, p. 759, and authorities there cited. It is not, however, necessary to question the soundness of the principles there enunciated. In that case, the railroad company had leased a portion of its depot grounds to the Hack & Bus Company, which, relying upon said lease, sought to exclude Sootsma, who also operated a hack, from said leased premises. It is apparent that the contract between the railroad company

and its lessee was one which resulted in profit to the company, while, in the case at bar, the record fails to show that Eagle paid anything for the privilege; indeed, the declaration charges that Eagle and his agents were given free transportation, while a like favor was refused plaintiff.

So far as the averments in the declaration disclose the facts in the case, it may be presumed that the arrangement between the defendant and Eagle was one solely for the benefit and accommodation of the traveling public, and to provide it with a capable and responsible agency for the transaction of such business as the traveler desired to commit to its care. This court said, in *Kalamazoo Hack & Bus Co.* v. *Sootsma, supra:*

"But independently of the statute, upon principle, the plaintiff could not recover in this case. A railroad company can make all needful reasonable rules and regulations concerning the use of its depots and grounds, and can exclude all persons therefrom who have no business with the railroad or the passengers going to and coming from the trains or depots, and it probably can prohibit all persons from soliciting business for themselves upon its premises; but it cannot, arbitrarily, admit one common carrier of passengers or freight to its depots or grounds, and exclude all others, for no other reason than that it is for its own profit or pleasure."

In considering this identical question here involved, it was said in *Kates* v. *Cab Co.*, 107 Ga. 636 (34 S. E. 372, 46 L. R. A. 431):

"It cannot successfully be maintained that the grant of these privileges to the cab company is in violation of law, nor do the concessions of themselves create a monopoly, nor are they in any sense an interference with the right of the traveling public. On the contrary, it will be recognized that the exercise of the facilities named tends to the public convenience and the prompt and safe handling of the baggage of the passenger. Under no view of the case would the petitioner be entitled to the aid of the courts in restricting these conveniences, and lessening the facilities for the safe and convenient handling of the

effects of a passenger. * * * It is not the right of the plaintiff in error, by injunction or otherwise, to take away or disturb any reasonable means tending to promote the convenience or comfort of the public. The merit of his complaint, if any exists, must be found in the fact of the refusal of the defendant to grant to him the opportunities so to serve the public and thereby better his business. Whether the refusal so to do is proper or unlawful does not depend upon the favor or inclination of the railroad company, but upon the plaintiff's right. If it should depend upon favor, then the plaintiff in error has no cause of complaint, because favor is essentially free and voluntary, and may not be demanded; and it is in this view that we come to measure by the legal standard what are the rights of the petitioner under the allegations he makes, as against the rights of the defendants to control property to which they have title and consequently the right of use, and the plaintiff in error, to succeed, must establish the proposition that the defendants as common carriers are in law bound to afford to him the same conveniences and facilities for carrying on his business, which they afford to others engaged in the same calling. * * * Railroad companies have rights of way, stations, depots, cars, engines, etc., as their equipment to serve the public. In the use of such property as public carriers, no one of the public ought to be favored more than another, nor is it lawful to impose any restriction, or make any discrimination in such use, against any one, which does not apply to all.; but this rule of impartiality applies to railroad companies in their public capacity, and it by no means follows that such reasonable rules and regulations which a carrier may make for the protection of its property, for the safety and convenience of its passengers or freights, are subject to the same unqualified condition."

See, also, *Donovan* v. *Pennsylvania Co.,* 120 Fed. 215, 57 C. C. A. 362 (61 L. R. A. 140).

It has been held, in many jurisdictions, that the right to sell lunches upon railroad premises is wholly dependent upon contract. See *Barney* v. *Steamboat Co.,* 67 N. Y. 301 (23 Am. Rep. 115); *Landrigan* v. *State,* 31 Ark. 50 (25 Am. Rep. 547).

I am of opinion that, if plaintiff's position is tenable, it could be urged with equal force that any one desiring to

enter defendant's trains to sell books, candies, fruits, etc., would have a perfect right to do so. Supplying these necessities to the traveling public adds to the comfort of travel, and, of course, results in profit to the person or corporation exercising the privilege; but I think it would scarcely be claimed that the railroad was guilty of unjust discrimination because it granted this privilege to one only, thus protecting its patrons from the annoyance of a horde of insistent vendors.

We may take judicial notice of the fact that defendant is engaged in interstate commerce. 16 Cyc. p. 861, and cases there cited. Section 1 of the interstate commerce law ( Act Feb. 4, 1887, chap. 104, 24 U. S. Stat. 379 [U. S. Comp. Stat. 1901, p. 3154]) permits railways to furnish free transportation to baggage agents, among others. Section 3 provides that it shall be unlawful for any common carrier to give any undue or unreasonable preference or advantage to any particular person, etc. It has been held repeatedly that all discriminations are not unlawful, but only such as are unjust, undue, or unreasonable. See *Louisville, etc., R. Co.* v. *Naval Stores Co.*, 198 U. S. 483 ( 25 Sup. Ct. 745), and cases there cited and approved. Cases may arise, as in the case under consideration, where, to preserve to the public a valuable right, a railroad company not only has the power, but it is bound, to exercise its right of selection or discrimination to the end that public convenience may be served, and its passengers' baggage handled with promptness and safety.

The judgment is affirmed.

OSTRANDER, C. J., and HOOKER, BLAIR, MOORE, MC-ALVAY, and STONE, JJ., concurred. BIRD, J., did not sit.