# KANSAS CITY TERMINAL RAILWAY COMPANY, Appellant, v. TOM JAMES et al.

### In Banc, April 28, 1923.

1. COMMON CARRIERS: Discrimination: Constitutional Inhibition. Under the Constitution (Sec. 23, Art. 12) a railway union station corporation cannot discriminate between taxicab companies for the use of the plaza appurtenant to the station and belonging to the station company. All said companies being common carriers, the union station company cannot grant to one said taxicab company for a percentage of moneys received by it in the transportation of passengers and baggage, privileges, in the use of its plaza and its other appurtenant grounds, denied to other like taxicab companies.

2. ————: ————: ————: Monopoly. The plaintiff owns a union station into which many passenger trains daily enter. Adjoining its station. and separated therefrom by sidewalks, constructed by it, is a plaza or roadway, belonging to it and designed for the use of automobiles, taxicabs and carriages in hauling passengers
   298 Mo.—32

and baggage arriving or departing upon said trains, and plaintiff contends that, said plaza and roadway being its own private property, the Constitution (Sec. 23, Art. 12) does not give a taxicab company the right to conduct its business thereon without plaintiff's consent. The plaintiff entered into a contract with a transfer company by which said transfer company was permitted to establish a booth inside the station for the solicitation of taxicab transportation of passengers and baggage, and for this privilege the plaintiff was to receive thirteen per cent of the gross annual receipts of the transfer business above fifty thousand dollars, and said contract declared that this compensation to plaintiff is fixed in view of the fact that plaintiff "has not given to any firm or individual rights and privileges similar to those herein granted to the transfer company." Thereafter the plaintiff brought this injunction suit against other taxicab companies charging that, in defiance of plaintiff's ownership of the plaza, defendants have repeatedly stood their vehicles thereon, have solicited business thereon in a loud and boisterous manner, have interferred with and annoyed patrons of said railroads using said passenger station, have taken possession of a part of the plaza and roadways and have refused to surrender said possession to plaintiff. Section 23 of Article 12 of the Constitution provides that "no discrimination in charges or facilities in transportation shall be made between transportation companies and individuals, or in favor of either, by abatement, drawback or otherwise; and no railroad company, or any lessee, manager or employee thereof, shall make any preference in furnishing cars or motive power." The plaintiff, the transfer company and the defendants are all common carriers. *Held, first,* that, if the contract entered into between the plaintiff and the transfer company be held valid, it would result in creating a monopoly in favor of the transfer company in the business of transporting passengers and baggage to and from the union station; and, *second,* that whatever may be the rulings of courts in other states, said constitutional provision prevents the discrimination in favor of said transfer company and against the defendant taxicab companies, and presents a decree enjoining defendants from standing their automobiles and other vehicles on the plaza or roadway and soliciting the patronage of passengers thereon. [Following Cravens v. Rodgers, 100 Mo. 247.]

*Held,* by WHITE, J., concurring, with whom JAMES T. BLAIR and RAGLAND, JJ., concur, that the plaza, a wide roadway, being laid out in front of the station for the purpose of affording an opportunity to passengers arriving and departing on trains a convenient station exit and entrance, was property dedicated to public use, whether or not formally so dedicated, and plaintiff, under the color of its right to control its own property,

had no right to discriminate among taxicab drivers who come there for the purpose of receiving or discharging passengers arriving or departing on trains, or to say what particular vehicle the passenger should take to travel the streets of the city, or to grant to any taxicab company, for a consideration, a monopoly of the transfer business.

*Held*, by DAVID E. BLAIR, J., dissenting, with whom GRAVES, J., concurs, that the petition does not seek to interfere with the entrance by defendants upon plaintiff's grounds or their delivery of passengers and baggage transported to its station by them, but it does seek to restrain them from soliciting business and patronage upon plaintiff's grounds and in its building and from standing their automobiles upon its plaza or roadway; and the grant of an exclusive right, by contract, for a consideration, to a particular company to solicit transfer business and stand its cabs upon plaintiff's grounds appurtenant to the station is not an illegal discrimination among taxicab drivers, all of whom are common carriers. The independent right of a taxicab driver to go upon the station premises before he has any legal relation with passengers, either to solicit their patronage or stand his cab, without the consent of the owner of the station and premises, does not exist, and cannot be exercised without abolishing the right of ownership in the premises.

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney,* Judge.

AFFIRMED.

*Samuel W. Sawyer* for appellant.

(1) Neither Section 23 of Article XII of the Constitution, nor any principle of the common law gives the defendants the right to conduct their private business upon plaintiff's property without plaintiff's consent. R. S. 1919, secs. 9850, 9911, 9975, 9985; Christie v. Railroad, 94 Mo. 453; State ex rel. v. Associated Press, 159 Mo. 410; Express Cases, 117 U. S. 1; Railroad v. Pullman Co., 139 U. S. 79; The D. R. Martin, 11 Blatch. 233, Fed. Cas. 1030; Jencks v. Coleman, 2 Sumn. 221, Fed. Cases, 7258; Fluker v. Railroad, 81 Ga. 461; Railroad v. Transfer Co., 125 Ga. 677; Landrigan v. State, 31 Ark. 50; Railway v. Osborne, 67 Ark. 399; Barney v. Oyster Bay Co.,

67 N. Y. 301; Dingman v. Railway, 164 Mich. 328; Lewis v. Railroad, 36 Texas Civ. App. 48; Railway v. White, 156 S. W. (Tex.) 241; State v. Steele, 106 N. C. 766; People v. Telegraph Co., 166 Ill. 15. (2) Modern authority, almost without exception, sustains plaintiff's right. Donovan v. Railroad, 195 U. S. 279; Railroad v. Minnesota, 238 U. S. 340; Taxicab Co. v. Kutz, 241 U. S. 252; Carriage Co. v. Railway, 190 Fed. 212; Skaggs v. Railway, 233 Fed. 827; Cab Co. v. Terminal Association, 6 Mo. P. S. C. 19; Railroad v. Tripp, 147 Mass. 35; Railroad v. Brown, 177 Mass. 65; Railroad v. Sullivan, 177 Mass. 230; Railroad v. Scovill, 71 Conn. 136; Godbout v. Depot Co., 79 Minn. 188; Railroad v. Flynn, 26 N. Y. Supp. 859; Brown v. Railroad, 27 N. Y. Supp. 69; Railroad v. Sheeley, 27 N. Y. Supp. 185; Railroad v. Warren, 64 N. Y. Supp. 781; Railroad v. Bork, 23 R. I. 218; Railway v. Baggage Co., 99 Va. 111; Hedding v. Gallagher, 72 N. H. 377; State ex rel. v. Depot Co., 71 Ohio St. 379; Railroad v. Davidson, 33 Utah, 370; Kates v. Baggage Co., 107 Ga. 636; Cab Co. v. Hayden, 73 Wash. 24; Rose v. Commission 75, W. Va. 1; Railroad v. Graham, 64 Pa. Super. Ct. 437; Transfer Co. v. Portland, 84 Or. 343; Thompson v. Whitemore, 102 Atl. (N. J.) 692; Thompson v. Mount, 111 Atl. (N. J.) 173; Mader v. Topeka, 106 Kan. 867; Railroad v. Kohler, 107 Kan. 673; Denton v. Railway, 160 S. W. (Tex.) 113; Clisbee v. Railway, 230 S. W. (Tex.) 235. (3) The question is not one of public policy, but of private right. So far as public policy is incidentally involved, it is best served by complete protection of plaintiff's legal rights. Donovan v. Rairoad, 199 U. S. 279; Carriage Co. v. Railroad, 190 Fed. 212; Skaggs v. Railroad, 233 Fed. 827; Rose v. Commission, 75 W. Va. 1; Hedding v. Gallagher, 72 N. H. 377; Thompson v. Whitemore, 102 Atl. (N. J.) 692; Thompson v. Mount, 111 Atl. (N. J.) 173; Clisbee v. Railroad, 230 S. W. (Tex.) 235. (4) Cravens v. Rodgers, 101 Mo. 247, distinguished. Ferry Co. v. Railroad, 73 Mo. 389; Ferry Co. v. Railroad, 128 Mo. 224; Tel. Co. v. Tel. Co., 236 Mo. 114; State v. Commission, 272

Mo. 627; Taxicab Co. v. Kutz, 241 U. S. 252; Skaggs v. Railroad, 233 Fed. 827. (5) The plaintiff has not lost the title to nor the control of its property. 18 C. J. p. 105, sec. 120; Brinck v. Collier, 56 Mo. 160; Coberly v. Butler, 63 Mo. App. 556; Irvin v. Dixon, 9 How. (U. S.) 10; Crawshaw v. Corbett, 264 Fed. 962; Williams v. Railroad, 39 Conn. 509; Chicago v. Railroad, 152 Ill. 561; Railroad v. Atlanta, 118 Ga. 486; Railroad v. Ossining, 126 N. Y. Supp. 517; Railroad v. Plotz, 125 Ind. 26. (6) Injunction is the appropriate remedy. 4 Pomeroy, Equity (3 Ed.) sec. 1357; Bryant v. West, 219 S. W. (Mo.) 355; Donovan v. Railroad, 199 U. S. 279; Railroad v. Sullivan, 177 Mass. 230; Railway v. Roseville, 76 Oh. St. 108; Railway v. Seattle, 33 Wash. 513; Bacon v. Railroad, 83 Vt. 421.

*Clif. Langsdale* for respondents.

(1) The plaintiff and the Shaw Transfer Company, seek by this suit to perfect a monopoly of the taxicab business from the Union Station. (2) Under the Constitution and the law, both statutory and case, of this State, plaintiff is not entitled to the relief prayed for herein, and the Shaw Transfer Company cannot legally be given the exclusive privilege of carrying passengers for hire from Union Station. Cravens v. Rodgers, 101 Mo. 247; Kalamazoo Hack & Bus Co. v. Sootsma, 84 Mich. 198; Cole v. Rowen, 88 Mich. 219; State v. Reed, 76 Miss. 211; Pennsylvania Company v. Chicago, 181 Ill. 289; Montana Union Ry. Co. v. Langlois, 9 Mont. 419; McConnell v. Pedigo, 92 Ky. 465; Lucas v. Herbert, 148 Ind. 64; Indianapolis Union Ry. Co. v. Dohn, 153 Ind. 10. (3) The traveling public is entitled to the benefits of competition of livery and taxi-cab cars in transporting them from the Union Station to their various destinations. Cravens v. Rodgers, 101 Mo. 247; State v. Reed, 76 Miss. 211; Montana Union Ry. Co. v. Langlois, 9 Mont. 419; McConnell v. Pedigo, 92 Ky. 465; Indianapolis Union Ry. Co. v. Dohn, 153 Ind. 10. (4) The inconveniences which might result to the traveling pub-

lic from this kind of competition can all be corrected by proper and lawful regulations promulgated and enforced by the plaintiff. Cole v. Rowen, 88 Mich. 219; Indianapolis Union Ry. Co. v. Dohn, 153 Ind. 10.

WOODSON, C. J.—The plaintiff brought this suit in the Circuit Court of Jackson County against the defendants to enjoin the latter from entering the Plaza in front of the Union Depot, a corporation, at Kansas City, Missouri, for the purpose of securing and discharging passengers arriving at or departing from said depot, on various railroad trains entering said depot, or departing therefrom, from and destined to all points of the United States, Canada and Mexico. The trial was before the circuit court, which resulted in a finding and a decree for the defendant, and the plaintiffs, after moving unsuccessfully for a rehearing, duly appealed the cause to this court.

The sufficiency of the pleadings are not challenged, so we will put them aside.

This case was first argued and submitted to Division One of this court, and after argument and submission it was assigned to our learned Commissioner SMALL to write. He reported that in his opinion the judgment of the lower court should be reversed with directions that the defendants should be perpetually enjoined as prayed.

There was no vote taken on the opinion in Division One, but it ordered the cause to be transferred to Court en Banc, where it was reargued and submitted, and assigned to the undersigned to write the opinion.

The facts of the case are not complicated, and are correctly stated by Judge SMALL in his Divisional opinion, which I hereby adopt as the facts of the case in Court En Banc. They are as follows:

The defendants, some thirty persons in number, are the owners of automobiles and are engaged in transporting passengers for hire to and from the plaintiff's depot in said city. The petition was filed on the 10th day of June, 1920. It shows that twelve different trunk lines of railroad enter and use plaintiff's depot in handling

their in-going and out-going passengers and their baggage. That plaintiff owns the land upon which the Union Station and its tracks are located and also the land south of said Union Station and bordering thereon, extending from Main Street on the east to Pershing Road on the south and Broadway on the west, known as Union Station Plaza, which furnishes access to and egress from said Union Station; that plaintiff at its own cost and expense has provided such sidewalks and roadways on said Plaza as are necessary for the use of the traveling public having business with the plaintiff or the lines of railroad using said Union Station. That the land covered by said Plaza cost said plaintiff approximately $650,000, and is fairly worth one million dollars, and plaintiff has expended upon paving, sidewalks and other improvements on said Plaza $90,000, which are now reasonably worth that sum. That there are and at all times have been exclusive of the vehicles owned and operated by defendants sufficient vehicles for the transportation of passengers and baggage to and from said Union Station, which are permitted to stand upon the Plaza by the plaintiff, the owners of which observe the regulations imposed by the plaintiff and recognize the right of plaintiff to manage and control said Union Station and Plaza. That defendants and each of them assert the right to stand their automobiles upon the said Plaza and the roadways thereon and appurtenant thereto and to solicit business and otherwise to do business on the said Plaza and the roadways and sidewalks thereon and appurtenant thereto without securing plaintiff's permission, and in defiance of plaintiff's ownership of said Plaza and the regulations for the protection of the public and for the preservation of order thereon. That defendants, and each of them in pursuance of their alleged claims, have heretofore continued to and have repeatedly stood their vehicles on the Plaza and roadways thereon; have solicited business thereon in a loud and boisterous manner; have interfered with and annoyed patrons of said lines of railroad using said union

passenger station and have committed repeated trespasses upon said Plaza and Union Station. Defendants have also taken possession of a part of said Plaza and roadways thereon in defiance of plaintiff's ownership thereof and of plaintiff's rights and have refused to surrender the possession and control thereof to the plaintiff and will continue to do so, violating the plaintiff's rights, unless restrained by an order of court, and plaintiff will thereby suffer irreparable damage. That defendants each earn large sums from the business so unlawfully transacted upon the plaintiff's property. The reasonable value of the space occupied by them exceeds $100,000. The value of the right asserted by plaintiff and sought to be protected exceeds $10,000, and plaintiff has no adequate remedy at law. The prayer is that defendants and their agents be enjoined from standing their horses, automobiles and vehicles of every kind on the said Plaza or upon the roadways thereon or appurtenant thereto and from soliciting the custom and patronage of persons or passengers upon said Plaza, sidewalks or roadways or into said station, except for the purpose of actually delivering passengers or baggage thereat and of receiving passengers and baggage for the transportation of which they shall have already received orders before coming upon said Plaza and for general relief.

The answer put the allegation of the petition in issue and alleged that ever since the Union Station was opened to the public said Plaza and the sidewalks and the roadways thereon had always been used by the public and that by reason thereof and the conduct of the plaintiff had become public roadways and public sidewalks and are now public roadways and sidewalks and are such under the laws of this State. That plaintiff is not entitled to the relief sought because it does not come into court with clean hands, in that the plaintiff and the Shaw Transfer Company, a corporation doing a taxicab business in Kansas City, Missouri, seek by this suit to set up and establish a monopoly of the taxicab business

done to and from the Kansas City Terminal Railway Station in the State of Missouri contrary to the laws of said State.

The reply was a general denial.

The testimony of the plaintiff tended to show the facts charged in its petition to be true. There was no serious attempt to show in the evidence, and no contention is made in the brief of counsel for defendants here, that the Plaza or any of the roadways or sidewalks there-on were ever dedicated to the public, but they were used with the consent of the plaintiff as private rights-of-way for access to and egress from said Union Station by the traveling public.

The evidence of the defendant tended to contradict that of the plaintiff as to the want of decorum on the part of the defendants in soliciting business upon the Plaza and sidewalks and roadways of the plaintiff. Defendants also offered in evidence two contracts made by the plaintiff with the Shaw Transfer Company, one dated the 31st of January, 1914, by which the plaintiff granted to said Taxicab Company the right to solicit patronage for its cabs upon said Plaza and at its said Union Station, and to allow the cabs, carriages and trucks of the Transfer Company to stand and wait upon said premises of the plaintiff, provided they did not interfere with traffic in and out of said station and that they should stand at such places as might be designated by the president of the plaintiff and under such regulations as he might prescribe. Said contract further provided that the Terminal Company should take all reasonable and lawful steps to secure to the Transfer Company the enjoyment of the privilege thereby granted and would, so far as it reasonably and lawfully may, prevent the cabs, carriages and baggage trucks of any other person or corporation engaged in soliciting or handling the same business as the Transfer Company and in competition with it, from so waiting or standing upon the premises of the Terminal Company at said Union Station. This contract further permitted the Shaw Transfer Company

to establish an office and booth inside of the Union Station for the solicitation and handling of business and to erect signs upon plaintiff's premises calling attention to the business of the Transfer Company. Under this contract, as compensation for the privileges granted, the Terminal Company was to receive thirteen per cent of the gross receipts for each calendar year in excess of $50,000, received by the Transfer Company from all passenger and baggage business done by it at the Union Station or upon the trains entering said station.

This contract was in effect for a period of five years and until the 15th of May, 1920, when a new and similar contract was entered into, leaving out the exclusive clause in the prior contract and inserting in lieu thereof the following: "Seventh; The rate of compensation to the Terminal Company provided for in Article Sixth hereof is fixed in view of the fact that the Terminal Company has not, at this time, given to any other firm, person or individual, rights and privileges similar to those herein granted to the Transfer Company, and it is agreed that should the Terminal Company hereafter do so, or should such rights and privileges hereafter be exercised or enjoyed by any person, firm or individual other than the Transfer Company, then this contract may, at the option of the Transfer Company, be cancelled on thirty days' written notice of its intention so to do. Provided, however, that nothing in this paragraph shall be construed as making the Terminal Company liable for any loss or damage which the Transfer Company might sustain by reason of the exercise by others of privileges similar to those by this contract granted to it, or make it liable for the return to the Transfer Company or any part of the compensation paid by the Transfer Company hereunder."

According to the testimony, plaintiff's share of the receipts or compensation from the Transfer Company was about $1,200 per month. The record also shows that the Shaw Transfer Company's attorney assisted in the trial of this case.

The testimony further shows that the Union Station building is located between 23rd and 24th Streets. It fronts south on said Plaza. The front extends from Main Street about 600 feet west. The Plaza is 250 or 300 feet wide, and extends along the entire front and also for some distance east and west thereof. The Station building has two entrances for the exit and entrance of passengers in front near the center facing the Plaza. The east entrance is about 300 feet from Main Street and the west entrance about 400 feet from said Main Street. Main Street runs north and south into the heart of the business and residence portions of the city. It is the street nearest the depot, and which is used generally by the public in going to and from the said depot.

There is a sidewalk running from Main Street adjoining the front of the Station and extending the full length thereof. South of the sidewalk is a paved roadway about eighty-five feet wide, running across the entire Plaza, and beyond that is a grass plot extending to the south line of the Plaza. Pershing Road runs along this south line, east and west.

Prior to the institution of this suit, another suit had been brought by one Skaggs, the owner of a motor car doing business for hire to and from the Union Station, to enjoin the plaintiff and the Shaw Transfer Company from interfering with him in the prosecution of his business and soliciting patronage at the Union Station. This suit was brought in the Circuit Court of Jackson County and was removed to the Federal Court at Kansas City, and upon trial in that court the injunction was denied.

Afterwards, a suit was brought in the Fall of 1918, by W. M. Corbett, president of the plaintiff, in his capacity as a Federal officer in charge of the Union Station under the Federal Administration. Said suit was similar to the present, seeking an injunction against the defendants in this case. It was brought in the United States District Court at Kansas City. Upon final hearing the relief prayed for was granted by said district court, and the

temporary injunction against defendants from soliciting business upon the plaintiff's premises was made permanent. From this judgment the defendants appealed to the United States Circuit Court of Appeals. When the cause reached a hearing in said Court of Appeals, the Government had surrendered possession of the plaintiff's station, of which fact said appellate court took judicial notice, and without passing upon the merits of the case, held that in any event the injunction could not last longer than the time during which the Government was in possession, and ordered the district court to modify its decree so as to terminate said injunction with the termination of Federal control. The defendants obeyed said injunction while it was in force, which was only for a few months, and made no attempt to solicit patronage upon plaintiff's premises during that time. Immediately, however, after the termination of said injunction, the defendants in this case resumed their business of soliciting passengers and patronage upon the Plaza, roadways and sidewalks of plaintiff, whereupon this suit was brought by plaintiff against the defendants to again restrain them from so doing.

I. The first contention of counsel for appellant is that "neither Section 23 of Article XII of the Constitution, not any principle of the common-law, gives the defendants the right to conduct their private business upon the plaintiff's private property without plaintiff's consent."

Discrimination: Private Property for Public Use.

This is rather a peculiar way of stating appellant's position, but I presume it must mean to convey the idea that the judgment of the circuit court resulted in taking appellant's private property without its consent, which was not authorized by Section 23 of Article XII of the Constitution, nor by any principle of the common law. Regardless of the manner of stating the proposition, this is the real legal proposition involved in this litigation.

In support of counsel's contention we are cited to

the following authorities: R. S. 1919, secs. 9850, 9911, 9975, 9985; Christie v. Railway, 4 Mo. 453; State ex rel. v. Assoc. Press, 159 Mo. 410; Express Cases, 117 U. S. 1; Railway v. Pullman Co., 139 U. S. 79; The D. R. Martin, 11 Blatch. 233, Fed. Cas. No. 1030; Jencks v. Coleman, 2 Sumn. 221, Fed. Case No. 7258; Fluker v. Railway, 81 Ga. 461, 8 S. E. 529; Railway v. Transfer Co., 125 Ga. 677, 54 S. E. 711; Landrigan v. State, 31 Ark. 50; Railway v. Osborne, 67 Ark. 399, 55 S. W. 142; Barney v. Oyster Bay Co., 67 N. Y. 301; Dingman v. Railway, 164 Mich. 328, 130 N. W. 24; Lewis v. Railway, 36 Tex. Civ. App. 48, 81 S. W. 111; Railway v. White, 156 S. W. (Tex.) 241; State v. Steele, 106 N. C. 766; People v. Tel. Co., 166 Ill. 15.

It must be admitted that there is some conflict between the authorities upon this proposition, but some of them, as I understand the cases, proceed upon a false basis.

In either event, I do not think we should give weight to the authorities cited, as against the rulings of our own court, and besides there are decisions of many other respectable courts which have taken the same view of the law of the case as this court has. Our decisions, and those of other states which adhere to the same views as we do, proceed upon the theory that, if the contract made and entered into by and between the appellant and the Shaw Transfer Company is held valid, and should be enforced, it will create a monopoly between them as to the automobile passenger business to and from the depot.

This exact point was decided by this court in favor of the respondent in the case of Cravens v. Rodgers, 101 Mo. 247, l. c. 252-53. The following cases also decide the precise question in the same way that this court decided it in the case of Cravens v. Rodgers, supra; Kalamazoo Hack & Bus Co. v. Oscar Sootsma, 84 Mich. 198, 47 N. W. 667; Cole v. Rowen, 88 Mich. 219, 50 N. W. 138; State v. Reed, 76 Miss. 211, 24 So. 308; Penna. Co. v. Chicago, 181 Ill. 289; Montana Union Ry. Co. v.

Langlois, 9 Mont. 419, 24 Pac. 209; McConnell v. Pedigo, 92 Ky. 465, 18 S. W. 15; Lucas v. Herbert, 148 Ind. 64, 47 N. E. 146; Indianapolis Union Ry. Co. v. Dohn, 153 Ind. 10, 53 N. E. 937.

But independent of that we have a constitutional provision which covers this case as completely as a glove covers the hand, namely, Section 23 of Article XII which reads as follows:

"No discrimination in charges or facilities in transportation shall be made between transportation companies and individuals, or in favor of either, by abatement, drawback or otherwise; and no railroad company, or any lessee, manager or employee thereof, shall make any preference in furnishing cars or motive power." Had this court never passed upon the question at all, this constitutional provision is so clear, complete and applicable that this court would have been firmly bound by its prohibitions.

Each of the appellants admittedly are common carriers, so are all of the defendants, and that being true, how can it be seriously contended that the Union Depot Company can discriminate in favor of the Shaw Transfer Company, and against the other twenty-eight defendants who are also common carriers of passengers and baggage for hire?

It seems to me that if any judge has any respect for his legal knowledge and oath of office, he is absolutely bound to give force and effect to that constitutional provision, regardless of the express holding of the cases before cited which hold in compliance to the views herein expressed.

When we view the cases counsel for appellant cite, they either are not binding upon this court, because the courts which rendered them are foreign, or they are based upon wholly erroneous bases, none of which should be sustained by this court.

II. There are several other interesting questions presented and discussed by counsel in their briefs, but clearly, however decided, they are subservient to the

views herein expressed, and no good purpose would, or could, be served, by prolonging this opinion by considering them.

Finding no error in the record, the judgment of the circuit court is affirmed. *Walker, J.,* concurs; *White, J.,* concurs in a separate opinion, in which *James T. Blair* and *Ragland, JJ.,* concur; *David E. Blair, J.,* dissents in a separate opinion, in which *Graves, J.,* concurs.

WHITE, J. (concurring).—I concur in the result reached by Woodson, C. J., and deem it proper to present the reasons for my position.

Some connecting-carrier cases are cited by appellant. Such cases are not in point. In each of them suit is brought by a party to a contract against the other party to the contract, either for breach of the same or to enjoin its infraction. The defendants in this case are not bound nor affected by any contract obligation between the plaintiff and the Shaw Transfer Company, for whom the Terminal Company was attempting to establish a monopoly of the taxicab business.

In the Wiggins Ferry Company Cases it was held simply that the railroad company affected had the right to deliver freight to the Ferry Company for a continuous passage to destination. [Wiggins Ferry Company v. C. & A. Ry. Co., 73 Mo. 389, 128 Mo. 224.]

In the Home Telephone Company Case, 236 Mo. 114, it was held that the two telephone lines operating in different fields could connect their line so as to transmit messages over the lines of both. It was held by this court that the effect was not to create a monopoly, but to afford competition. The Telephone Company and the Ferry Company cases, in fact and in principle, are unlike the case under consideration.

In the present case the plaintiff discharged its passengers in its depot and had nothing further to do with them except to provide for their safe and expeditious exit from the premises. The plaintiff seeks to enjoin defendant's from standing their cabs on the Plaza for

the purpose of receiving passengers, claiming that the space was private property.

The plaza was laid out across the front of the station —a wide thoroughfare—to afford opportunity to passengers arriving or departing to secure the most convenient means of exit and entrance. The fact that the company owned the ground at the time it was laid out and did not dedicate it to public use is of no significance; everybody was invited to use it as a public thoroughfare. Passengers arriving and departing on trains were invited to come and go in any kind of conveyance most convenient for the purpose. A passenger had the right to drive up to the front of the depot in his own conveyance or in a hired one; and a right to use his own conveyance, or a hired one, at that point to go away from the station. The taxicab drivers, as carriers, and as servants of the passengers, had the right to come there for the purpose of discharging passengers and of receiving passengers arriving on the railroad. The Terminal Company had no right to discriminate nor to interfere with such passengers as to what sort of conveyance they should take to get away from the depot, nor what sort of conveyance they should come there in. The plaintiff concedes that principle, yet under the thin guise of regulating the passenger traffic it denies its application.

It is true the Terminal Company had a right to control the use of its property so far as it was used. It allowed the Shaw Transfer Company to erect a stand inside the station, which it could very properly do. It very properly could have permitted only the one transfer company or taxicab company to carry passengers from the station to some destination, for instance another depot, if the passage was entirely over its own land. Here, however, was an attempt to say what particular vehicle a passenger should take to travel the streets of Kansas City. It says to all passengers arriving at the station that they shall take a yellow taxicab, for instance, and shall not take a blue taxicab when

they depart from the station, no matter what their destination. In other words, the patent purpose and effect of the arrangement was to give to the Shaw Transfer Company, for a consideration, a monopoly of the taxicab business in Kansas City. True, this purpose is under color of the right of the plaintiff to control its own property. But that is a mere pretense. There was no interference with the control of its own property, nor with the convenience of passengers arriving, nor with effective handling of plaintiff's business. The entire purpose was to have the passengers take one taxicab line and only one, from that station, and it does not matter under what pretense nor under what color that manifest purpose was attempted to be carried out. The case of Cravens v. Rodgers, 101 Mo. 247, is directly in point and should be followed. I think the judgment should be affirmed. *James T. Blair* and *Ragland, JJ.,* concur.

DAVID E. BLAIR, J. (dissenting).—I am unable to concur in the majority opinion. Such opinion adopts the statement made by SMALL, C., in the opinion written by him in Division One. I fully concur in Judge SMALL's opinion and adopt that portion of his opinion following the statement (already set out in the majority opinion) and beginning with paragraph II as my dissenting opinion in this case. *Graves, J.,* concurs herein.

"II. We have no doubt that the plaintiff may have intended, in fact did intend, to give the exclusive right to the Shaw Taxicab Company to solicit business and stand its cabs upon its grounds and Plaza, sidewalks and roads in front of its Union Station building, but it is not legally required to do so by the contract entered into May 15, 1920. Assuming that plaintiff intends to thus favor the Shaw Taxicab Company, the question we have to decide is, whether it has the legal right to do so. The petition does not seek to interfere with the defendants from entering upon plaintiff's grounds and into its station building in delivering passengers and baggage transported to its depot by defendants, but to

298 Mo.—33

restrain defendants from soliciting patronage and business upon its said grounds and in its buildings or standing their cabs upon its grounds.

"Learned counsel for respondents rely upon the following authorities to sustain the judgment of the lower court, holding that plaintiff had no right to so exclude defendants from its premises, to-wit: Cravens v. Rodgers, 101 Mo. 247; Kalamazoo Bus Co. v. Sootsma, 84 Mich. 198; Cole v. Rowen, 88 Mich. 219; State v. Reed, 76 Miss. 211; Pennsylvania Co. v. Chicago, 181 Ill. 289; Montana Ry. Co. v. Langlois, 9 Mont. 419; McConnell v. Pedigo, 92 Ky. 465; Lucas v. Herbert, 14 Ind. 64; Indianapolis Union Ry. Co. v. Dohn, 153 Ind. 10.

"Appellant relies on the following authorities to show that it had a legal right to make such exclusive contract with said Shaw Taxicab Company, or any other responsible party who will properly attend to the business of transporting passengers and baggage to their destination in said Kansas City, and thus to exclude defendants from soliciting business or standing their cabs upon its property: Ferry Co. v. Railroad, 73 Mo. 389; Ferry Co. v. Railroad, 128 Mo. 224; Telephone Co. v. Telephone Co., 236 Mo. 114; State ex rel. Tel. Co. v. Commission, 272 Mo. 627; Donovan v. Railroad, 199 U. S. 279; Railroad v. Minnesota, 238 U. S. 340; Carriage Co. v. Railway, 190 Fed. 212; Skaggs v. Railway, 233 Fed. 827; Cab Company v. Terminal Association, 6 Mo. P. S. C. 19; Railroad v. Tripp, 147 Mass. 35, 17 N. E. 89; Railroad v. Brown, 177 Mass. 65, 58 N. E. 189; Railroad v. Sullivan, 177 Mass. 230, 58 N. E. 689; Railroad v. Scovill, 71 Conn. 136, 41 Atl. 246; Godbout v. Depot Co., 79 Minn. 188, 81 N. W. 835; Railroad v. Flynn, 26 N. Y. Supp. 859; Brown v. Railroad, 27 N. Y. Supp. 69; Railroad v. Sheeley, 27 N. Y. Supp. 185; Railroad v. Warren, 64 N. Y. Supp. 781; Railroad v. Bork, 23 R. I. 218, 49 Atl. 965; Railway v. Baggage Co., 99 Va. 111, 37 S. E. 784; Hedding v. Gallagher, 72 N. H. 377, 57 Atl. 225; State ex rel. v. Depot Co., 71 Ohio St. 379, 73 N. E. 633; Railroad v. Davidson, 33 Utah, 370, 94 Pac. 10;

Kates v. Baggage Co., 107 Ga. 636, 34 S. E. 372; Rose v. Commission, 75 W. Va. 1, 83 S. E. 85; Railroad v. Graham, 64 Pa. Super. Ct. 437; Transfer Co. v. Portland, 84 Ore. 343, 164 Pac. 570; Thompson v. Whitemore, 102 Atl. (N. J.) 692; Thompson v. Mount, 111 Atl. (N. J.) 173; Mader v. Topeka, 106 Kan. 867, 189 Pac. 969; Railroad v. Kohler, 107 Kan. 673, 193 Pac. 323; Denton v. Railway, 160 S. W. (Tex.) 113; Clisbee v. Railway, 230 S. W. (Tex.) 235.

*"As to the authorities relied on by respondents*:

"Cravens v. Rodgers, 101 Mo. 247, was decided in 1890. In that case it was held that a railroad company had no authority to make a contract giving one hackman the exclusive right to use the most convenient and accessible portion of its depot platform to deliver and receive and solicit the carrying of passengers and baggage to and from the several trains using its depot, to the adjoining town of Gallatin, Missouri. There were two hack lines at Gallatin and the owners of one hack line had, by agreement with the agent of the railroad company whose authority was not questioned, received such an exclusive right from the Chicago, Rock Island & Pacific Railroad Company, which owned and operated the depot and on whose line it was located. The court said, page 252 et seq.: 'The exclusive privilege which the plaintiffs claim, under their license from the railroad company's station agent, of occupying the space beside the railroad platform of easiest approach thereto, next to the station building, the objective point for the discharge of the railroad passengers, is a valuable one, giving the plaintiffs an advantage, in carrying on their business, over the defendants, their rivals, in the same line of business. The business of both parties is that of common carriers for hire, on the same line, and by their connection with the railroad forming one continuous line, by which passengers are transported to the same general destination, the railroad company carrying them to its station near the city, and plaintiffs

and defendants carrying them to their several destinations in the city. As common carriers it is the duty of each of the parties to transport all persons who offer to take and pay for passage with them, and they are charged with grave and responsible duties to such persons when they have once taken passage. They must make the trip whether they have one or many passengers. As a corollary of this duty to carry all, there ought to be a corresponding right upon the part of each to have the same facilities afforded them to obtain the passage in their respective vehicles of all such passengers as are brought to the point of connection by the connecting carrier, the railroad company, on the same general route. In this way the enterprise of each is encouraged, competition is stimulated, the price of transportation is kept within reasonable bounds; the safest, best and most comfortable means of conveyance, a rapid passage and polite and agreeable service are apt to be secured to the traveling public.

" 'On the other hand, if better facilities are afforded to one carrier than another by the connecting carrier, competition is discouraged, a monopoly created, and the traveling public are apt to receive a slow, uncomfortable, slovenly, negligent and expensive service. Monopolies are obnoxious to the spirit of our laws, and ought to be discouraged. This is the spirit of our constitutional provision which prohibits "discrimination in charges, or facilities in transportation . . . between transportation companies and individuals or in favor of either." [Art. 12, sec. 23.] And in this case we do not think the railroad company could give the plaintiffs the exclusive privilege of approach to nearly one-half of its platform, and that the most desirable and advantageous half for procuring passengers, and thereby deny it to the defendants, both being there for the same purpose and in the same business of forwarding the railroad's passengers to their places of destination from the point where the railroad company landed them.'

"No authorities are referred to by the learned court in its opinion.

"The case of Wiggins Ferry Co. v. Chicago & Alton Railroad Co., 73 Mo. 389, had been decided at that time. That case held that defendant Railroad Company had power to contract with plaintiff Ferry Company to complete the transportation of goods whose destination was at St. Louis, Missouri, by giving all its ferry business to said Wiggins Ferry Company which operated a ferry across the Mississippi River between St. Louis, Missouri, and East St. Louis, Illinois. The court held that the contract was valid and was neither *ultra vires,* condemned by public policy, nor in restraint of trade. The court said, at pages 409-410, in answer to the argument that the exclusive feature of the contract prevented.the railroad from securing for the public the best service in transporting persons and property from its terminus at East St. Louis to St. Louis, Missouri, as it was required by its charter to do: 'It was no concern of the public what particular ferry should be employed by the defendant as an instrumentality for the prompt passage over the river of all freight and passengers requiring such transit, provided the one employed was in all respects sufficient to accomplish such purpose without imposing any additional burden on the shipper. The obligation of plaintiff required it to "furnish and maintain wharf and steam ferry boats sufficient to do with promptness and dispatch all the ferrying of passengers and freight requiring it." What more than this could be demanded? What right of the public was disregarded by defendant agreeing always to employ a company which it had thus obligated?'

"The same ruling was made in Wiggins Ferry Co. v. Chicago & Alton Railroad Company, 128 Mo. 224.

"In Telephone Co. v. Telephone Co., 236 Mo. 114, we held that two telephone companies operating in different fields may, by contract, arrange for physical connection of their lines and such contract is valid and will be enforced, although the contract provides that

neither party thereto shall enter into a like contract with any other company, and although if such contract be enforced it will deprive one of them of the right to make such physical connection with a third company—overruling the case of Telephone Co. v. Telephone Co., 147 Mo. App. 216, where such contract on the authority, largely, of Cravens v. Rodgers, supra, was held void, on the ground that it provided for an unjust discrimination by one common carrier against another as to equal facilities for connecting business. [See 147 Mo. App. 237.] The case in the 236 Mo., the opinion being written by Judge Graves, was decided on the authority of the two Wiggins Ferry Cases. The court said, page 136: 'Under the railway statute this court has held that it is proper for a railway company to enter into a contract with a single ferry company to handle its freight, and that a violation of such contract by employing another ferry company rendered the railroad company liable in damages. It was further held that such contract was not void as violative of public policy, nor as being a contract in restraint of trade or creating a monopoly. [Wiggins Ferry Co. v. Railway Co., 73 Mo. 389; Wiggins Ferry Co. v. Railway Co., 128 Mo. 224.] In these cases the contract provided for one continuous line of transportation. The railway company ended at East St. Louis and wanted to get to St. Louis. The contract was for ferriage across the river, and obligated the railway company not to use any other ferry. At the time there were two other corporations conducting a ferriage business. These cases to my mind practically settle the controversy in this case.'

"In the case of Cravens v. Rodgers, supra, the depot was about one-half mile outside of the city of Gallatin. There were but the two hack lines. The court expressly holds that they were connecting carriers of the railroad company, 'and by their connection with the railroad forming one continuous line, by which passengers were transported to the same general destination, the railroad carrying them to its station near the city, and plain-

tiffs and defendants carrying them to their several destinations in the city.'  The court held that because the hackmen were connecting carriers of the railroad, the railroad could not make an exclusive contract by which it gave one the advantage over the other in getting or doing such connecting business.  The Ferry Company and Telephone cases, supra, expressly decide the other way and must be deemed to overrule, if not expressly, yet by implication, the Cravens-Rodgers Case.  This view of the effect of our decisions was taken by the Federal court in the litigation referred to in that court, Skaggs v. Terminal Co., 233 Fed. l. c. 830-31, and by our Public Service Commission, when it had the same question as to the rights of the cabmen at the St. Louis Union Station before it.  [Yellow Cab Motor Co. v. Terminal Ry. Assn., 6 Mo. P. S. C. 19.]  We think such view is correct.

"If, therefore, connecting-carrier cases are in point the law in this State is with the appellant in this case. If not, the question is an open one in this court, and we think that by far the greater weight of authority and reason is with the appellant.  There are several cases cited by respondents where the facts were the same as in the case, i. e. where the cabmen asserted the right to go upon the depot company's premises to solicit business and stand their cabs where the court ruled they had a right to do so, chiefly on authority of the Cravens-Rodgers Case, decided by this court, to-wit: Kalamazoo Hack & Bus Co. v. Sootsma, 84 Mich. 198; State v. Reed, 76 Miss. 211; Indianapolis Ry. Co. v. Dohn, 153 Ind. 10.  A later case in Michigan, Dingham v. Railway, 164 Mich. 328, in effect made a contrary ruling and said that the Sootsma Case "was probably against the current authority."  Some of the other cases cited by respondents tend to support, but do not involve the precise question here.  Other cases, notably the case of Pennsylvania Railroad Co. v. Chicago, 181 Ill. 289, do not involve at all the question we have to decide, as pointed out by the Supreme Court of the United States,

in Donovan v. Railroad, 199 U. S. 300. The Donovan Case was decided in 1900 and presents the same question we have to decide, to-wit, whether cabmen have the right to go upon the depot company's premises to solicit business and stand their cabs. That they may do so to deliver the passengers which they bring to the depot or to receive those whom they have already agreed to transport, is not denied by the plaintiff, and is not sought to be prevented by this proceeding. They have such right as the agent of the passenger, who has a right to go to the place assigned passengers in the depot itself, and to have his agent or servant accompany him, to render such assistance as he desires. But a different question is presented where the cabmen claims as his own independent right the right to go upon the depot premises before he has any legal relations with such passengers, either to solicit their patronage or stand his cab upon the company's premises, without its consent. We hold this cannot be done without abolishing the right of ownership in its property possessed by the depot company. In the Donovan Case, the Parmelee Transfer Company had an exclusive contract with the depot company by which it alone could solicit business from incoming passengers or stand its vehicles upon the depot company's property at Chicago, and the court, in a most thorough and exhaustive opinion, held such contract valid—that it in no way violated public policy, or interfered with lawful competition, or was an unlawful discrimination, created a monopoly or restraint of trade, or in any way invalid. Among other things the court said, page 294 et seq.:

" 'Although its functions are public in their nature, the company holds the legal title to the property which it has undertaken to employ in the discharge of those functions. And as incident to ownership it may use the property for the purposes of making profit for itself; such use, however, being always subject to the condition that the property must be devoted primarily to public objects, without discrimination among passengers

and shippers, and not be so managed as to defeat those objects. It is required, under all circumstances, to do what may be reasonably necessary and suitable for the accommodation of passengers and shippers. But it is under no obligation to refrain from using its property to the best advantage of the public and of itself. It is not bound to so use its property that others, having no business with it, may make profit to themselves. Its property is to be deemed, in every legal sense, private property as between it and those of the general public who have no occasion to use it for purposes of transportation. . . .

" 'It was therefore its duty to see to it that passengers were not annoyed, disturbed or obstructed in the use either of its station house or of the grounds over which such passengers, whether arriving or departing, would pass. It was to that end—primarily, as we may assume from the record—that the Pennsylvania Company made an arrangement with a single company to supply all vehicles necessary for passengers. We cannot say that that arrangement was either unnecessary, unreasonable or arbitrary; on the contrary, it is easy to see how, in a great city and in a constantly crowded railway station, such an arrangement might promote the comfort and convenience of passengers arriving and departing, as well as the efficient conduct of the company's business. The record does not show that the arrangement referred to was inadequate for the accommodation of passengers. But if inadequate, or if the transfer company was allowed to charge exorbitant prices, it was for passengers to complain of neglect of duty by the railroad company and for the constituted authorities to take steps to compel the company to perform its public functions with due regard to the rights of passengers. The question of any failure of the company to properly care for the convenience of passengers was not one that, in any legal aspect, concerned the defendants as licensed hackmen and cabmen. It was not for them to vindicate the rights of passengers. They

only sought to use the property of the railroad company to make profit in the prosecution of their particular business. A hackman, in nowise connected with the railroad company, cannot, of right and against the objections of the company, go upon its grounds or into its station or cars for the purpose simply of soliciting the custom of passengers; but, of course, a passenger upon arriving at the station, in whatever vehicle, is entitled to have such facilities for his entering the company's depot as may be necessary.

" 'Here the defendants press the suggestion that they are entitled to the same rights as were accorded by special arrangement to the Parmelee Transfer Company. They insist, in effect, that as carriers of passengers they are entitled to transact their business at any place which under the authority of law, is devoted primarily to public uses—certainly at any place open to another carrier engaged in the same kind of business. But this contention, when applied to the present case, cannot be sustained. The railroad company was not bound to accord this particular privilege to the defendants simply because it had accorded a like privilege to the Parmelee Transfer Company; for it had no contractual relations with the defendants, and owed them as hackmen no duty to aid them in their special calling. The defendants did not have or profess to have any business of their own with the company. In meeting their obligations to the public, whatever the nature of those obligations, the defendants could use any property owned by them, but they could not, of right, use the property of others against their consent. In maintaining a highway, under the authority of the State, the first and paramount obligation of the railroad company was, as we have already said, to consult the comfort and convenience of the public who used that highway. To that end it could use all suitable means that were not forbidden by law. In its discretion it could accept the aid or stipulate for the services of others. But, after providing fully for the wants of passengers and ship-

pers, it did not undertake, expressly or by implication, to so·use its property as to benefit those who had no business or connection with it.   It is true that by its arrangement with the railroad company the Parmelee Company was given an opportunity to control, to a great extent, the business of carrying passengers from the Union Passenger Station to other railway stations and to hotels or private houses in Chicago.   But in a real, substantial, legal sense, that arrangement cannot be regarded as a monopoly in the odious sense of that word, nor does it involve an improper use by the railroad company of its property.   That arrangement is to be deemed, not unreasonably, a means devised for the convenience of passengers and of the railroad company, and as involving such use by the company of its property as is consistent with the proper performance of its public duties and its ownership of the property in question.   If the company by such use of its property also derived pecuniary profit for itself, that was a matter of no concern to the defendants and gave them no ground of complaint.'

"All of the cases cited by respondents were decided before this pronouncement of the Supreme Court of the United States.   Many of the other cases cited by appellant were decided since then and all follow the ruling in the Donovan Case.   No case has been cited by the diligence of counsel or has been found by us, decided since the Donovan Case, which has laid down a contrary rule.   We cannot incumber this opinion further by quotations from the numerous authorities cited by counsel for appellant, but it is sufficient to say of them that they are all in point and strongly sustain the conclusion we have reached in this case.   Railroad v. Davidson, 33 Utah, 370, decided in 1908, is, however, worthy of special notice, in that it contains a most thorough reiew of all the authorities up to that time, as well as a most comprehensive and satisfactory consideration of the subject on principle.

"We therefore rule that plaintiff's contract with the Shaw Taxicab Company of May 17, 1920, is legal and

valid, and that defendants have no right, without plaintiff's consent, to go upon any part of plaintiff's depot grounds or buildings or upon its Plaza, or the roadways or sidewalks thereon, described in the petition, to solicit business or to stand their cabs or vehicles thereon, except in bringing and delivering passengers and their baggage to plaintiff's station, which must be done in a proper and orderly manner, subject to reasonable rules and regulations of the plaintiff.

"III. Respondents' learned counsel does not contend that injunction is not the proper remedy if plaintiff is right on the merits of the case. That injunction is the proper remedy we have no question. [Donovan v. Railroad, 199 U. S. 279; Railroad v. Sullivan, 177 Mass. 230, and other cases cited by appellant.]

"The result is, we reverse the judgment of the lower court and remand the case with directions to enter up judgment for the plaintiff, granting it a perpetual injunction, as prayed in its petition and according to the views herein expressed."